DANIEL B. ASIMOW (Bar No. 165661)
daniel.asimow@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:     415.471.3100
Facsimile:     415.471.3400

C. SCOTT LENT (*admitted pro hac vice*)
scott.lent@arnoldporter.com
OMAR DEBS (*pro hac vice forthcoming*)
omar.debs@arnoldporter.com
ESTHER H, SOHN (*admitted pro hac vice*)
esther.sohn@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 W 55th Street
New York, NY 10019
Telephone:     212.836.8000
Facsimile:     212.836.8689

*Attorneys for Defendants California Interscholastic
Federation and the 10 CIF Sections*

[Additional Counsel on Signature Page]

J. SCOTT DONALD
(Bar No. 158338)
scottd@sdnlaw.com
**SPINELLI, DONALD & NOTT**
300 University Avenue, Suite 100
Sacramento, CA 95825
Telephone:   916.448.7888
Facsimile:   916.488.6888

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DOMINIK CALHOUN, on behalf of himself
and all others similarly situated;

Plaintiff,

vs.

CALIFORNIA INTERSCHOLASTIC
FEDERATION et al.,

Defendants.

Case No.: 3:25-cv-4603-LB

**NOTICE OF MOTION AND MOTION TO
DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT**

Hon. Laurel Beeler

Date: November 13, 2025
Time: 9:30 a.m.
Location: Courtroom B, 15th Floor

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

Please take notice that on November 13, 2025 at 9:30 a.m., or as soon thereafter as the

4

matter may be heard, in the courtroom of the Honorable Laurel Beeler, Courtroom B, 15th Floor,

5

Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San

6

Francisco, California, 94102.Defendants California Interscholastic Federation ("CIF"); Central

7

Section of California Interscholastic Federation; Central Coast Section; California Interscholastic

8

Federation; CIF Los Angeles City Section; North Coast Section of the California Interscholastic

9

Federation; Northern Section California Interscholastic Federation; Oakland Athletic League;

10

CIF Oakland Section; California Interscholastic Federation–Sac Joaquin Section; California

11

Interscholastic Federation; San Diego Section; California Interscholastic Federation San

12

Francisco City Section; California Interscholastic Federation Southern Section (collectively the

13

"CIF Sections," and together with CIF, collectively the "CIF Defendants"); 2080 Media, Inc.;

14

Huddle Tickets, LLC; NFHS Network, LLC; MaxPreps, Inc.; VNN Media, LLC;[1] Playfly, LLC;

15

SBLive Sports, Inc.; and Spectrum SportsNet, LLC (collectively the "Media Defendants") will

16

and hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

17

Procedure, for an order dismissing with prejudice the Complaint in its entirety.  The motion to

18

dismiss is brought on the grounds that the Complaint fails to state a claim upon which relief can

19

be granted.

20

The Motion is based on this Notice of Motion and Motion, the accompanying

21

Memorandum of Points and Authorities, the complete files and records in this action,

22

Defendants' request for judicial notice, oral arguments of counsel, and such other and further

23

matters as this Court may consider.

24

25

26

---

27

[1]     The named defendant, VNN, Inc. is a dissolved entity, and the applicable entity should be VNN Media, LLC.

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

INTRODUCTION .............................................................................................................1

ALLEGATIONS OF THE COMPLAINT.....................................................................................2

    A.    The Parties and Claims ................................................................2

    B.    California Law and Regulations on Interscholastic Athletics.............................4

    C.    The Challenged CIF Rules ................................................................5

        1.    Amateurism Rule ................................................................5

        2.    Transfer Limits................................................................5

        3.    NIL Compensation Limits ................................................................6

    D.    Alleged Relevant Markets................................................................6

        1.    The Alleged California High School Athletic Labor Market .................6

        2.    The Alleged California High School Student Athlete NIL Market .........7

ARGUMENT ................................................................................................................7

I.    DEFENDANTS ARE IMMUNE FROM PLAINTIFF'S CLAIMS................................7

    A.    The CIF Defendants Are Immune from Suit Under the Eleventh Amendment................................................................8

        1.    The Legislature Intended the CIF Defendants to Act as Arms of the State................................................................8

        2.    The "Control" Factor Shows CIF Defendants Are Arms of the State................................................................12

        3.    The Treasury Factor Shows CIF Defendants Are Arms of the State.......13

    B.    All Defendants Are Entitled to State-Action Antitrust Immunity Under *Parker v. Brown* ................................................................14

        1.    California Has a "Clearly Articulated" State Policy to Regulate High School Athletics Through the CIF Defendants.............................15

2.  Although Not Required, the CIF Defendants That Implement the
    Challenged Restraints Are Actively Supervised by the State ................ 17

3.  State-Action Immunity Extends to the Media Defendants ..................... 18

C.  The Media Defendants Are Also Immune Under *Noerr-Pennington* ................ 18

II.  PLAINTIFF LACKS ARTICLE III AND ANTITRUST STANDING .......................... 19

A.  Plaintiff Fails to Allege Injury in Fact with Respect to Any of the
    Challenged Restrictions ...................................................... 20

1.  Plaintiff Does Not Allege He Would Have Received Compensation
    for His "Athletic Labor" Greater Than the Alleged Monetary Limit ...... 20

2.  Plaintiff Does Not Allege He Was Injured by CIF Transfer Rules ........ 21

3.  Plaintiff Does Not Allege He Would Have Received Compensation
    for His NIL but for the Alleged Rule Restricting the Use of School
    or Team Names and Identifying Marks ................................... 22

B.  Plaintiff Lacks Standing to Sue Under the Antitrust Laws ................... 22

C.  Plaintiff Lacks Standing to Seek Injunctive Relief ........................ 26

III.  THE ALLEGED RELEVANT MARKETS ARE FATALLY DEFECTIVE ................. 26

A.  The Alleged "Statewide Market for Athletic Labor" Market Is
    Implausible ............................................................... 28

B.  The Alleged National Market for NIL Use Is Implausible ................... 28

IV.  PLAINTIFF'S STATE LAW CLAIMS AGAINST THE CIF DEFENDANTS
     ARE EQUALLY DEFECTIVE ...................................................... 30

CONCLUSION ..................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AmeriCare MedServices, Inc. v. City of Anaheim*,
    No. 8:16-cv-1703-JLS-AFMx, 2017 WL 5592892 (C.D. Cal. Apr. 21, 2017) ......................18

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)...........................................................................................................22

*B.C. v. Plumas Unified Sch. Dist.*,
    192 F.3d 1260 (9th Cir. 1999) ..........................................................................................26

*Babb v. California Teachers Ass'n*,
    378 F. Supp. 3d 857 (C.D. Cal. 2019) ...............................................................................14

*Bayer v. Neiman Marcus Grp., Inc.*,
    861 F.3d 853 (9th Cir. 2017) ............................................................................................26

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................................7

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
    182 F.3d 1096 (9th Cir. 1999) ...........................................................................................27

*Brentwood Academy v. Tenn. Secondary School Athletic Ass'n*,
    531 U.S. 288 (2001)............................................................................................................11

*Brentwood Academy v. Tenn. Secondary School Athletic Ass'n*,
    No. 3:97-1249, 2002 WL 32333036 (M.D. Tenn. Oct. 25, 2002)..........................................11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)............................................................................................................23

*Burgert v. Lokelani Bernice Pauahi Bishop Tr.*,
    200 F.3d 661 (9th Cir. 2000) ..............................................................................................7

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972)............................................................................................................19

*Cal. Crane Sch., Inc. v. Google LLC*,
    722 F. Supp. 3d 1026 (N.D. Cal. 2024) .............................................................................31

*Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*,
    445 U.S. 97 (1980)..............................................................................................................14

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
 20 Cal. 4th 163 (1999) ....................................................................................31

*Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*,
 810 F.2d 869 (9th Cir. 1987) ...........................................................................19

*City of Oakland v. Oakland Raiders*,
 20 F.4th 441 (9th Cir. 2021) .............................................................................23

*City of Pittsburgh v. West Penn Power Co.*,
 147 F.3d 256 (3d Cir. 1998)..............................................................................24

*Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
 236 F.3d 1148 (9th Cir. 2001) ..........................................................................30

*Concord Assocs., L.P. v. Entm't Props. Tr.*,
 817 F.3d 46 (2d Cir. 2016)................................................................................29

*Coronavirus Rep. v. Apple, Inc.*,
 85 F.4th 948 (9th Cir. 2023) .............................................................................29

*DaimlerChrysler Corp. v. Cuno*,
 547 U.S. 332 (2006)....................................................................................19, 26

*Daniels-Hall v. Nat'l Educ. Ass'n*,
 629 F.3d 992 (9th Cir. 2010) ...............................................................................7

*Digital Sun v. Toro Co.*,
 No. 10–CV–4567–LHK, 2011 WL 1044502 (N.D. Cal. Mar. 22, 2011)...............31

*Dryer v. Nat'l Football League*,
 55 F. Supp. 3d 1181 (D. Minn. 2014), *aff'd*, 814 F.3d 938 (8th Cir. 2016) ..........25

*Durell v. Sharp Healthcare*,
 183 Cal. App. 4th 1350 (2010) .........................................................................31

*Gionfriddo v. Major League Baseball*,
 94 Cal. App. 4th 400 (Cal. Ct. App. 2001) ...................................................24, 25

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
 433 F. App'x 598 (9th Cir. 2011) ......................................................................29

*Green v. Peoples Energy Corp.*,
 No. 02 C 4117, 2003 WL 1712566 (N.D. Ill. Mar. 28, 2003) ..............................17

*Gudgel v. Clorox Co.*,
 514 F. Supp. 3d 1177 (N.D. Cal. 2021) .............................................................32

-iv-

*Ham v. Hain Celestial Grp., Inc.*,
　70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................................................. 31

*Hass v. Ore. State Bar*,
　883 F.2d 1453 (9th Cir. 1989) .......................................................... 14, 15, 16, 17

*Hess v. Port Auth. Trans-Hudson Corp.*,
　513 U.S. 30 (1994) ................................................................................................ 14

*Hicks v. PGA Tour, Inc.*,
　897 F.3d 1109 (9th Cir. 2018) ............................................................................. 26

*In re Canadian Imp. Antitrust Litig.*,
　470 F.3d 785 (8th Cir. 2006) ............................................................................... 23

*In re Capacitors Antitrust Litig.*,
　154 F. Supp. 3d 918 (N.D. Cal. 2015) ........................................................... 19, 21

*In re eBay Seller Antitrust Litig.*,
　545 F. Supp. 2d 1027 (N.D. Cal. 2008) ............................................................... 27

*In re Graphics Processing Units Antitrust Litig.*,
　527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................... 19

*In re Pa. Title Ins. Antitrust Litig.*,
　No. 08cv1202-WY, 2010 WL 4974942 (E.D. Pa. Nov. 30, 2010) ....................... 17

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
　868 F.3d 132 (3d Cir. 2017) ................................................................................. 23

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
　903 F. Supp. 2d 880 (C.D. Cal. 2012) ............................................................ 20, 23

*Int'l Boxing Club of N.Y., Inc. v. United States*,
　358 U.S. 242 (1959) .............................................................................................. 29

*Jones v. Micron Tech. Inc.*,
　400 F. Supp. 3d 897 (N.D. Cal. 2019) ........................................................... 26, 30

*Kendall v. Visa U.S.A., Inc.*,
　518 F.3d 1042 (9th Cir. 2008) ............................................................................... 7

*Kohn v. State Bar of Cal.*,
　87 F.4th 1021 (9th Cir. 2023) (en banc), *cert. denied*, 144 S. Ct. 1465 (2024) .............. *passim*

*Lee v. Nature's Path Food, Inc.*,
　No. 23-00751, 2023 WL 7434963 (S.D. Cal. Nov. 9, 2023) ................................ 32

MOTION TO DISMISS                                    Case No.: 3:25-cv-4603 LB

*Levine v. Blue Shield of Cal.*,
    189 Cal. App. 4th 1117 (2010) ..................................................................31

*LiveUniverse, Inc. v. MySpace, Inc.*,
    304 F. App'x. 554 (9th Cir. 2008) ...........................................................31

*Llewellyn v. Crothers*,
    765 F.2d 769 (9th Cir. 1985) .........................................................14, 16, 18

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
    726 F.2d 1381 (9th Cir. 1984) ..................................................................27

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
    791 F.2d 1356 (9th Cir. 1986) ..................................................................23

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................20

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ....................................................................7

*Marin Cnty. Bd. of Realtors, Inc. v. Palsson*,
    16 Cal. 3d 920 (1976) ...............................................................................30

*Marshall v. ESPN Inc. (Marshall I)*,
    111 F. Supp. 3d 815 (M.D. Tenn. 2015), *aff'd sub nom*, *Marshall v. ESPN*,
    668 F. App'x 155 (*Marshall II*) (6th Cir. 2016) ......................................25

*MiCamp Solutions, LLC v. Visa Inc.*,
    No. 23-cv-065351-HSG, 2025 WL 892570 (N.D. Cal. Mar. 24, 2025) ...............23

*Modesto Irrigation Dist. v. Pac.Gas & Elec. Co.*,
    309 F. Supp. 2d 1156 (N.D. Cal. 2004), *aff'd*, 158 F. App'x 807 (9th Cir.
    2005) .........................................................................................................23

*Nat'l Football League v. Alley*,
    624 F. Supp. 6 (S.D. Fla. 1983) ................................................................25

*NCAA v. Alston*,
    594 U.S. 69 (2021) ......................................................................................6

*Newcal Indus., Inc. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ..................................................................27

*nSight, Inc. v. PeopleSoft, Inc.*,
    296 F. App'x 555 (9th Cir. 2008) ..............................................................30

-vi-

*P.R. Ports Auth. v. Fed. Mar. Comm'n*,
    531 F.3d 868 (D.C. Cir. 2008) ..................................................................8

*Parker v. Brown*,
    317 U.S. 341 (1943) ................................................................... *passim*

*Person v. Google, Inc.*,
    No. C 06-7297 JF (RS), 2007 WL 832941 (N.D. Cal. Mar. 16, 2007) ..................29

*Pistacchio v. Apple Inc.*,
    No. 4:20-cv-07034-YGR, 2021 WL 949422 (N.D. Cal. Mar. 11, 2021) ..............31

*Roth v. Rhodes*,
    25 Cal. App. 4th 530 (1994) ..................................................................30

*RSA Media, Inc. v. AK Media Grp., Inc.*,
    260 F.3d 10 (1st Cir. 2001) ..................................................................23

*Ryan v. Cal. Interscholastic Fed'n-San Diego Section*,
    94 Cal. App. 4th 1048 (2001) ............................................................10, 11

*Sanders v. Lockyer*,
    365 F. Supp. 2d 1093 (N.D. Cal. 2005), *aff'd sub nom. Sanders v. Brown*, 504
    F.3d 903 (9th Cir. 2007) ................................................................18, 19

*Saxton v. Cnty. of Sonoma*,
    No. 21-cv-09499-SI, 2022 WL 3549779 (N.D. Cal. Aug. 17, 2022) ....................20

*Sidibe v. Sutter Health*,
    No. C 12-04854 LB, 2013 WL 2422752 (N.D. Cal. June 3, 2013) ......................30

*Snake River Valley Elec. Ass'n v. PacifiCorp*,
    357 F.3d 1042 (9th Cir. 2004) ..............................................................17

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ............................................................20, 21

*Somerson v. World Wrestling Ent., Inc.*,
    956 F. Supp. 2d 1360 (N.D. Ga. 2013) ......................................................25

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................19, 20

*Steffes v. Cal. Interscholastic Fed'n*,
    176 Cal. App. 3d 739 (1986) ....................................................8, 9, 10, 15

*StubHub, Inc. v. Golden State Warriors, LLC*,
    No. C 15-1436 MMC, 2015 WL 6755594 (N.D. Cal. Nov. 5, 2015)......................30

-vii-

*Tanaka v. Univ. of S. Cal.*,
  252 F.3d 1059 (9th Cir. 2001) .......................................................................27, 29

*Town of Hallie v. City of Eau Claire*,
  471 U.S. 34 (1985).......................................................................................15

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).......................................................................................26

*United Food & Comm. Workers Local 1776 v. Teikoku Pharma USA, Inc.*,
  74 F. Supp. 3d 1052 (N.D. Cal. 2014) ..........................................................31

*Universal Grading Serv. v. eBay, Inc.*,
  No C-09-2755 RMW, 2012 WL 70644 (N.D. Cal. Jan. 9, 2012)....................30

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).......................................................................................26

*Walcoff v. Innofoods USA, Inc.*,
  No. 22-cv-1485, 2023 WL 3262940 (S.D. Cal. May 4, 2023) .......................32

**Statutes**

Cal. Civ. Code
  § 3344(d)......................................................................................... *passim*

Cal. Code Regs. tit. 5
  § 5596(*l*)......................................................................................... *passim*

Cal. Educ. Code
  § 33353......................................................................................... *passim*

  § 33354.......................................................................................13, 17

  § 35179......................................................................................... *passim*

  § 35179.7.......................................................................................4, 16, 24

  § 48200.......................................................................................28

  § 48204.......................................................................................28

  § 48301.......................................................................................5, 16, 24

  § 48355.......................................................................................24

MOTION TO DISMISS                                    Case No.: 3:25-cv-4603 LB

California Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.* ...............................................3

California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ............................3

Sherman Act, 15 U.S.C. § 1 ...............................................................................................................3

**Other Authorities**

Assembly Bill 167, 2021–2022 Reg. Sess. (Cal. 2021) ....................................................................14

2023 Cal. Legis. Serv. Ch. 366 .........................................................................................................17

MOTION TO DISMISS                                    Case No.: 3:25-cv-4603 LB

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

3    This case is an attempt to use antitrust law to reshape high school sports in California.

4 Plaintiff, now a Division I college football player, seeks to represent a class of over a million

5 California high school athletes across all high school sports for the benefit of an athletically

6 privileged few.  No doubt emboldened by the success of challenges to certain NCAA rules, he

7 challenges three rules that have long governed California high school sports:  limits on payments

8 to high school athletes for playing on a team or otherwise; limits on transfers; and limits on the

9 athletes' ability to earn money from sponsorships while wearing their high school team uniforms.

10 But the rules governing California high school athletes are fundamentally distinct from the

11 NCAA rules imposed on college athletes—they operate under different purposes, reflect

12 different policy considerations, and therefore demand an entirely separate legal analysis.

13    *First*, the California Interscholastic Federation ("CIF") and its sections are arms of the

14 State of California.  As the complaint acknowledges, CIF "is the governing body for high school

15 sports in the State of California."  Cplt. ¶ 13.  The California legislature designated CIF as the

16 organization "with responsibility for administering interscholastic athletic activities in secondary

17 schools."  Cal. Educ. Code § 33353 (West 2025).  For decades, California courts have treated

18 actions by CIF as state actions subject to the U.S. Constitution.  Because of CIF's status as an

19 arm of the state, the Court lacks jurisdiction over any suit against the CIF Defendants under the

20 Eleventh Amendment.

21    Further, state-action immunity precludes this case from going forward as to all

22 Defendants.  The challenged rules are implemented by an entity designated by the State to

23 regulate in this area and reflect a clearly articulated state policy to treat high school athletics as

24 an extra-curricular activity and to place academics ahead of athletics.  State law specifically

25 prohibits schools from recruiting high school students for athletic purposes; prohibits athletically

26 motivated transfers; and permits sports broadcasters and others to show and report on sporting

27 events without paying the participants.  Parties that act in accord with a state policy are immune

28

-1-

under the state-action immunity doctrine.  If Plaintiff does not like the State-endorsed rules for high school sports in California, his only recourse is through the Legislature.

*Second*, Plaintiff lacks standing because he fails to allege that he was harmed by any of the rules he challenges.  For instance, he complains about a rule that limits transfers between high schools for athletic reasons, but admits that he actually *did* transfer and identifies no additional transfer that he would have pursued absent the challenged rule.  He does not allege the type of concrete injury Article III requires.  Further, Plaintiff cannot show antitrust injury because the harm he seeks to redress flows directly from state law, and so would exist with or without the CIF rules he challenges.

*Third*, Plaintiff fails to plead plausible antitrust markets.  He alleges a labor market that presumes interchangeability of athletes in widely varying sports with widely varying skill levels, and a market for licensing high school athletes' "names, images and likenesses" ("NIL") in their high school uniforms that is both too narrow in that it is limited to California athletes and too broad in that it includes athletes who could never expect to find commercial value in this type of NIL.  Put simply, Plaintiff's proffered markets make no sense.

*Fourth* and finally, Plaintiff's state law claims fare no better.[2]  The state antitrust and unfair competition claims fail for the same reasons Plaintiff's Sherman Act claims fail.  Plaintiff's last claim, for unjust enrichment, is not a freestanding cause of action in California, and even if it were, Plaintiff has failed to plead necessary facts to support such a claim, including failing to plausibly allege that CIF retained any benefit at Plaintiff's expense.

For each of these reasons, the Complaint should be dismissed in its entirety.

## ALLEGATIONS OF THE COMPLAINT

### A.    The Parties and Claims

**Plaintiff.**  Plaintiff Dominik Calhoun alleges that, between 2021 and 2024, he played football and participated in track and field competitions while attending two different California high schools.  Cplt. ¶¶ 8-9.  He alleges that he graduated in 2025 and has committed to play

---

[2]    Plaintiff voluntarily dismissed all his state-law claims against the Media Defendants.  Those claims thus are brought only against the CIF Defendants.  *See* Dkt. 57.

MOTION TO DISMISS                                    Case No.: 3:25-cv-4603 LB

football at the collegiate level at Boise State University.  Cplt. ¶ 9.  He complains that certain rules governing high school sports in California constitute unreasonable restraints of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.*, and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and results in unjust enrichment.  Cplt. ¶ 4. He seeks trebled damages, equitable relief, and attorney's fees.

**CIF and CIF Sections.**  The Complaint identifies two categories of defendants, the first being CIF and its ten Sections (collectively, the "CIF Defendants").  CIF is a California non-profit corporation that "is the governing body for high school sports in the State of California," Cplt. ¶ 13, and "operates as the sole regulatory authority over high school sports in California." Cplt. ¶ 2.  Each of the ten CIF Sections are likewise organized as California non-profit corporations, created within CIF to oversee high school sports in their respective geographic areas.[3]  Cplt. ¶¶ 22-32.  Although the Sections may adopt their own rules, those rules cannot conflict with CIF's rules.  Cplt. ¶ 22.  The Complaint alleges that CIF and each of the Sections engage in marketing, sponsorship, and/or digital content production with several third-party companies, including many of the so-called "Media Defendants."  Cplt. ¶¶ 22-32.

**Media Defendants.**  The "Media Defendants" are alleged to have received revenue from CIF's challenged rules and consist of four companies or corporate families:

- **2080 Media, Inc.**  Doing business as PlayOn! Sports ("PlayOn"), 2080 Media, Inc. owns and controls the brands and services MaxPreps, Inc., NFHS Network, VNN Media, LLC, and Huddle Tickets, LLC, doing business as GoFan.  Cplt. ¶¶ 33-37.  The Complaint alleges that PlayOn's services are used by many high schools in California for, among other things, broadcasting and streaming athletic events, concessions sales, digital ticketing, marketing, and sponsorships.  Cplt. ¶ 33.

---

[3]    The Sections are the Northern Section, North Coast Section, San Francisco Section, Oakland Section, Sac-Joaquin Section, Central Coast Section, Central Section, Los Angeles City Section, Southern Section, and the San Diego Section.

- **Playfly, LLC ("Playfly").** The Complaint alleges that Defendant Playfly is a full-service marketing company that provides services to CIF. Cplt. ¶ 38.

- **SBLive Sports, Inc. ("SBLive").** The Complaint alleges that Defendant SBLive is a CIF partner and offers software solutions for scorekeeping and media publishing and distribution for high school sports. Cplt. ¶ 39.

- **Spectrum SportsNet, LLC ("SportsNet").** The Complaint alleges that Defendant SportsNet allegedly has paid for the exclusive rights to televise certain state-level CIF sporting events. Cplt. ¶ 40.

**B.      California Law and Regulations on Interscholastic Athletics**

California law establishes a comprehensive framework for the governance of interscholastic athletics. State law provides that school boards may enter "associations or consortia" "for the purpose of enacting and enforcing rules relating to eligibility for, and participation in, interscholastic athletic programs among and between schools." Cal. Educ. Code § 35179(b). In 1981, the Legislature recognized CIF and assigned it responsibility for administering high school sports, subject to public records and open meeting requirements and periodic reporting to the Governor and Legislature. *See id.* § 33353. The Legislature expressed through statute its "intent" for CIF to implement policies concerning interscholastic athletic activities in secondary schools. *Id.* § 33353(a)(1).

The Legislature also directly regulates interscholastic athletics in a number of ways relevant here. First, the Legislature directed the State Board of Education to adopt standards that prohibit school employees "from exerting undue influence in a pupil's decision to enroll in an athletic program." *See id.* § 35179.7. CIF has defined "undue influence" to mean "any act, gesture, or communication . . . which may be objectively seen as . . . inducing a student . . . to enroll in, transfer to, or remain in, a particular school for athletic purposes," Cplt. ¶ 66 (quoting CIF Bylaw 510(A)). The implementing regulations go one step further to explicitly bar school personnel from "recruitment of athletes from other schools," Cal. Code Regs. tit. 5, § 5596(*l*). Second, while some schools are permitted to have so-called "open enrollment" policies, those schools are barred from considering athletic performance or targeting prospective students based

-4-

on athletic skill.  *See* Cal. Educ. Code § 48301(a), (b).  Finally, California Civil Code § 3344(d) permits any broadcaster or similar entity to use student-athletes' NIL in broadcasts and accounts of high school sporting events without obtaining the student-athletes' consent.

### C.    The Challenged CIF Rules

Exercising the authority delegated to it by the Legislature, CIF has adopted a variety of rules to implement the Legislature's policies on interscholastic athletics.  The Complaint challenges three categories of CIF rules:  (1) the amateurism rule, (2) the rules regarding athletically motivated transfers, and (3) the rules related to NIL compensation.  Cplt. ¶¶ 45-84.  Because the Complaint references these rules, Defendants ask the Court to take judicial notice of the actual text of CIF's Constitution and Bylaws.  *See* Defs.' Req. for Judicial Notice, filed herewith.

### 1.    Amateurism Rule

Plaintiff claims that CIF Bylaw 212, which governs "amateur status," limits student-athletes' ability to receive compensation for their athletic participation, which Plaintiff terms "labor."  Cplt. ¶ 45.  The rule prohibits student-athletes who compete at CIF-member schools from receiving "athletic awards" totaling more than $250 for regular-season CIF-sanctioned games and more than $500 for post-regular-season high school games.  Cplt. ¶ 46.  CIF Bylaw 802(D) specifies that such awards cannot be cash, gift certificates, or merchandise alone, but instead should be in the form of "merchandise, badge, medal, plaque, ribbon, picture, certificate, or trophy, if it is suitably engraved or designated as an award."  *Id.*  CIF Bylaw 803 extends the same restrictions to contributions from entities like booster clubs or corporate donors.  Cplt. ¶ 50.

### 2.    Transfer Limits

Plaintiff challenges CIF and Section Defendants' rules that limit transfers to CIF member schools for "athletically motivated" reasons and that "proscribe any athletic recruiting efforts by school-affiliated persons as 'undue influence.'"  Cplt. ¶ 54.  Specifically, the Complaint alleges that CIF Bylaws 201 ("Standards of Eligibility"), 206 ("Residential Eligibility"), 207 ("Transfer Eligibility"), and 510 ("Undue Influence") "curtail student-athletes' ability to transfer between CIF member high schools for 'athletically motivated' reasons."  Cplt. ¶ 56.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.    NIL Compensation Limits

The last group of rules at issue in the Complaint involves limits on student-athletes' ability to receive compensation for licensing their NIL to third parties.  Cplt. ¶ 77.  CIF does not enforce a blanket ban on student-athletes' ability to profit from licensing their NIL.  *Id*.  In fact, student-athletes may freely engage in NIL licensing, provided such arrangements are unconnected to a team, school, league, or CIF affiliation, and provided that any endorsements or advertising are not recorded on school property.  *Id*.  The Complaint further alleges that students are not compensated for their so-called "Broadcast Name, Image, and Likeness" or "BNIL" in "live or prerecorded broadcasts of athletic competitions . . .  and in sports data and marketing software."  Cplt. ¶ 107.

### D.    Alleged Relevant Markets

Plaintiff appears to concede that his antitrust claims must be analyzed under the rule of reason, which obligates him to show harm to competition in a relevant market.  *See, e.g.*, *NCAA v. Alston*, 594 U.S. 69, 87-97 (2021) (rule of reason applies to challenge to NCAA rules).  To that end, the Complaint purports to identify two relevant markets allegedly harmed by the enforcement of the challenged CIF rules:  (1) the statewide market for California student-athlete high school labor and (2) the national market for high school student-athlete NIL.  Cplt. ¶¶ 91, 107.

### 1.    The Alleged California High School Athletic Labor Market

Plaintiff alleges there is a "statewide market for the athletic labor of CIF high school student-athletes in the various sports in which they compete (the California High School Athletic Labor Market)," with each sport constituting its own alleged submarket.  Cplt. ¶ 91. The Complaint asserts that this market already exists and would expand significantly without CIF's rules.  Cplt. ¶ 92.  Plaintiff claims that, absent the challenged rules, "many [students] would choose" to use the newfound ability to "transfer for athletic reasons" and the ability to "receive compensation for their athletic labor" in order to obtain payments from schools and others for participating in high school athletics.  Cplt. ¶ 103.

1

2.      **The Alleged California High School Student Athlete NIL Market**

2       The second alleged relevant market is "the national market for the use of California high

3 school student-athletes' names, images, and likenesses for commercial and promotional

4 purposes," including "in sports data and marketing software" and "in live or prerecorded

5 broadcasts of athletic competitions"—i.e., BNIL rights. Cplt. ¶ 107. The Complaint asserts that

6 CIF's rules prevent student-athletes from receiving compensation tied to BNIL and "school-

7 affiliated NIL." *Id.* Despite California law, which explicitly authorizes NIL use in broadcasting

8 and covering live sports events without prior consent (*see* Cal. Civ. Code § 3344(d)), the

9 Complaint alleges that the Media Defendants' failure to negotiate for the use of high school

10 student-athletes' alleged BNIL rights is evidence of their "acquiescence" to CIF's rules. Cplt. ¶¶

11 138-139. Plaintiff claims that, absent the challenged rules, high school student-athletes would

12 receive "a share of revenues for the group licensing of their NIL and BNIL." Cplt. ¶ 108.

13                          **ARGUMENT**

14      Under Rule 12(b)(6), the Court should accept the complaint's well-pleaded factual

15 allegations and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burgert v.*

16 *Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). However, the Court is

17 not "required to accept as true allegations that contradict exhibits attached to the Complaint or

18 matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted

19 deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d

20 992, 998 (9th Cir. 2010) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

21 1031 (9th Cir. 2008)). To survive a motion to dismiss, a plaintiff's claims must allege "enough

22 facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

23 544, 555-56, 570 (2007); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir.

24 2008) (plaintiff must plead "not just ultimate facts . . . but evidentiary facts").

25 **I.      DEFENDANTS ARE IMMUNE FROM PLAINTIFF'S CLAIMS**

26      Plaintiff's claims fail at the threshold because every Defendant in this case is immune

27 from suit. To start, the Eleventh Amendment's promise of sovereign immunity bars any suit in

28 federal court against the CIF Defendants. CIF and its ten Sections are arms of the State of

-7-

California, authorized by statute to regulate interscholastic athletics on behalf of public schools. It is no surprise, then, that California courts have consistently recognized the enforcement of CIF rules as "state action" subject to the limitations of the Constitution. *See, e.g.*, *Steffes v. Cal. Interscholastic Fed'n*, 176 Cal. App. 3d 739, 749-50 (1986).  As arms of the state, the CIF Defendants are entitled to Eleventh Amendment immunity in federal court. *Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1032 (9th Cir. 2023) (en banc), *cert. denied*, 144 S. Ct. 1465 (2024) (holding that State Bar, despite being organized as a "public corporation," is an arm of the state entitled to sovereign immunity).

Independent of the Eleventh Amendment, all Defendants are shielded by the state-action antitrust immunity doctrine first recognized in *Parker v. Brown*, 317 U.S. 341 (1943).  That doctrine bars antitrust liability when, as here, the challenged restraints implement a clearly articulated state policy.  California has expressly adopted such policies:  it designated CIF to administer interscholastic activities in secondary schools, and it further enacted specific legislation or regulations that prohibit high school officials from recruiting or soliciting transfers for athletic reasons and that authorize the uncompensated use of athletes' names, images, and likenesses in sports broadcasts and accounts.  Because the CIF Defendants and the Media Defendants acted pursuant to those state policies, they cannot be subjected to antitrust liability.

## A.    The CIF Defendants Are Immune from Suit Under the Eleventh Amendment

To determine whether an entity is an "arm of the state," the Ninth Circuit applies a three-factor test, which looks to:  "(1) the [s]tate's intent as to the status of the entity, including the functions performed by the entity; (2) the [s]tate's control over the entity; and (3) the entity's overall effects on the state treasury."  *Kohn*, 87 F.4th at 1030 (alterations in original) (quoting *P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008)).  These factors overwhelmingly support the application of immunity here.

### 1.    The Legislature Intended the CIF Defendants to Act as Arms of the State

The first *Kohn* factor centers on whether the law "characterizes" CIF as a "governmental instrumentality."  *Id.* at 1031 (quoting *P.R. Ports Auth.*, 531 F.3d at 877).  This factor weighs

-8-

heavily in favor of finding that the CIF Defendants are immune.  The Complaint refers to CIF as the "sole *regulatory* authority over high school sports in California[,]" stating that "[i]ts membership includes over 1,600 private and public schools throughout the state, who are further organized geographically into ten *administrative* Sections."  Cplt. ¶ 2 (emphasis added).  Indeed, CIF and its Sections are expressly authorized by the Legislature to regulate eligibility and other competition issues for California high school sports.  *See* Cal. Educ. Code § 33353(a).  The Education Code provides that each school district has control of and is responsible for "all aspects of the interscholastic athletic policies, programs, and activities in its district, including, but not limited to, eligibility, season of sport, number of sports, personnel, and sports facilities." *Id.* § 35179(a).  It further provides that school governing boards "may enter into associations or consortia . . . for the purpose of enacting and enforcing rules relating to eligibility for, and participation in, interscholastic athletic programs among and between schools."  *Id.* § 35179(b). California law "makes clear that CIF is such a voluntary association" contemplated under Section 35179(b), and that consequently CIF has the authority from the State to "enact and enforce rules relating to eligibility for, and participation in, interscholastic athletics."  *Steffes*, 176 Cal. App. 3d at 749-50 (citing Cal. Educ. Code § 33353(a)).

In addition to possessing statutory authority from the Legislature to enact and enforce eligibility rules on school boards' behalf, the Legislature further directs CIF to establish certain regulatory procedures for public involvement in CIF akin to those required for state agencies. For example, CIF must:

- "Give the governing boards of school districts specific authority to select their athletic league representatives."  Cal. Educ. Code § 33353(a)(1);

- "Require that all league, section, and state meetings affiliated with the California Interscholastic Federation be subject to the notice and hearing requirements of the Ralph M. Brown Act."  *Id.* § 33353(a)(2);

- "Establish a neutral final appeals body to hear complaints related to interscholastic athletic policies."  *Id.* § 33353(a)(3);

- "Provide information to parents and pupils regarding the state and federal

1    complaint procedures for discrimination complaints arising out of interscholastic

2    athletic activities." *Id.* § 33353(a)(4); and

3    • "Comply with the California Public Records Act." *Id.* § 33353(a)(5).

4    These statutory provisions express a clear intent by the Legislature for CIF and its

5 Sections to act as the State for the purposes of high school athletics, and to abide by laws and

6 regulations applicable to State institutions. The Legislature's decision to subject CIF and its

7 Sections to the Public Records Act and open meetings laws—requirements ordinarily applicable

8 only to public entities—weighs heavily in favor of finding immunity. *See Kohn*, 87 F.4th at

9 1034.

10    While it is possible for an entity's action to be "state action" for purposes of the

11 Fourteenth Amendment without the entity enjoying immunity under the Eleventh Amendment,

12 the Ninth Circuit emphasized in *Kohn* that an entity's treatment "as a governmental

13 instrumentality for purposes of other California laws" is a relevant consideration for determining

14 whether an entity has immunity under the Eleventh Amendment. 87 F.4th at 1034 (cleaned up).

15 That is the case here. For nearly 40 years, California courts have treated actions by CIF as state

16 actions subject to constitutional scrutiny. For example, in *Steffes*, which involved an equal

17 protection challenge to the same CIF transfer rules that Plaintiff challenges here, the court held

18 that enforcement of those rules was "state action" subject to applicable limitations of the

19 California Constitution. 176 Cal. App. 3d at 746. In *Jones v. California Interscholastic Fed'n*,

20 the court examined the same statutes discussed above, expressly recognized that enforcement of

21 CIF's eligibility rules was "state action" under California law, and applied "the same rules of

22 construction to administrative rules and regulations as are applied to statutes" to CIF's

23 interpretation of its rules. 197 Cal. App. 3d 751, 756-58 (1988). And most recently, in *Ryan v.*

24 *California Interscholastic Fed'n-San Diego Section,* 94 Cal. App. 4th 1048 (2001), a student

25 claimed that CIF-San Diego Section's "undue influence" and "review of eligibility decision"

26 rules were unconstitutional, facially and as applied, under the due process clause of the

27 California Constitution. The court analyzed CIF's procedural rules just as it would the rules of a

28 State agency and held, *inter alia*, that CIF's rules for resolving disputes and its appeal process

1   were adequate under California's due process clause and that the "administrative record"

2   developed through CIF's process supported CIF-San Diego's finding of undue influence in that

3   case, just as if the court was assessing any government agency action.  *Id.* at 1057-76.

4          California courts' recognition that the enforcement of CIF rules is "state action" is

5   consistent with the United States Supreme Court's analysis of the exact same issue in *Brentwood*

6   *Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001).  In that case,

7   a private high school challenged enforcement of "undue influence" rules set by the Tennessee

8   Secondary School Athletic Association as a violation of the First and Fourteenth Amendments to

9   the Constitution pursuant to 42 U.S.C. § 1983.  *Id.* at 293.  The school also asserted antitrust

10  claims against the Athletic Association.  *See Brentwood Academy v. Tenn. Secondary School*

11  *Athletic Ass'n*, No. 3:97-1249, 2002 WL 32333036, at *1 (M.D. Tenn. Oct. 25, 2002).  The

12  Supreme Court examined the makeup of the Association and held that its "nominally private

13  character" was "overborne by the pervasive entwinement of public institutions and public

14  officials in its composition and working."  *Brentwood Academy*, 531 U.S. at 298.  Similar to CIF,

15  the Association was "not an organization of natural persons acting on their own, but of schools,

16  and of public schools to the extent of 84% of the total."  *Id.*  The Association was, in essence,

17  "an organization of public schools represented by their officials acting in their official capacity to

18  provide an integral element of secondary public schooling."  *Id.* at 299-300.  Moreover, members

19  of the State Board of Education were "assigned ex officio to serve as members of the

20  [Association's] board of control and legislative council."  *Id.* at 300.

21         That "entwinement," the Court reasoned, "support[s] a conclusion that [this] ostensibly

22  private organization ought to be charged with a public character and judged by constitutional

23  standards."  *Id.* at 292, 300, 301.  The Court further observed that, "save for the Sixth Circuit

24  [whose decision the Court reversed], every Court of Appeals to consider a statewide athletic

25  association like the one here has found it [to be] a state actor."  *Id.* at 304.  On remand, in

26  reliance on the Supreme Court's state action decision, the district court granted summary

27  judgment to the Tennessee athletic association on the antitrust claims asserted against it.

28  *Brentwood Academy*, 2002 WL 32333036, at *1.

-11-

Here (1) the statutory framework authorizing CIF and its Sections to promulgate and enforce rules regarding athletic eligibility; (2) the California courts' express recognition for approximately 40 years that enforcement of CIF and Section rules—the very rules Plaintiff challenges here—is "state action"; and (3) the Supreme Court's ruling that enforcement of analogous Tennessee athletic eligibility rules constitutes state action, all compel the result that the Legislature intended CIF and its Sections to be an "administrative arm" of the State, *Kohn*, 87 F.4th at 1024, and that they are therefore entitled to Eleventh Amendment immunity.

### 2. The "Control" Factor Shows CIF Defendants Are Arms of the State

The second factor—control—considers first "how the directors and officers" of the entity "are appointed." *Kohn*, 87 F.4th at 1035. The Complaint alleges that "CIF is governed by the CIF Federated Council, which consists of high school superintendents, principals, athletic directors, educators, and allied organizations." Cplt. ¶ 18; *see also* Cal. Educ. Code § 33353(a) ("The California Interscholastic Federation is a voluntary organization that consists of school and school-related personnel with responsibility for administering interscholastic athletic activities in secondary schools."). The Federated Council always includes "a representative from the State Department of Education." Defs.' Req. for Judicial Notice Ex. 1, CIF Const. Art. 3 § 30. Other members are elected from each CIF Section, which is made up of educators and administrators of the member schools in that Section. *Id.* As such, save for a few members who are associated with private schools, the Federated Council is made up of government education employees. Voting Federated Council Members are not paid employees of CIF Sections. Defs.' Req. for Judicial Notice Ex. 1, CIF Const. Art. 3 § 33. A list of CIF's current Federated Council members and their titles precedes CIF's Constitution and Bylaws. *See* Defs.' Req. for Judicial Notice Ex. 1 at 4. Because CIF's leadership is predominantly composed of government employees acting pursuant to legislative directives to oversee high school athletics, this factor strongly supports a finding of state control.

Beyond just the makeup of the Federated Council, the "control" factor further considers the government's actual ability to control the challenged activity, *see Kohn*, 87 F.4th at 1035, which further weighs in favor of finding control here. The Department of Education and the

-12-

1   Legislature maintain significant control over the CIF Defendants' functioning. The Legislature

2   granted CIF the power to implement certain policies "in consultation with the [D]epartment" of

3   Education. Cal. Educ. Code § 33353(a). The Department of Education, which has a

4   representative on the Federated Council, has the power to require CIF to "adjust its policy" if its

5   rules are deemed "not in compliance with state or federal law." *Id*. § 33354(a)(2)(A). If a public

6   school complainant believes that CIF has acted in a discriminatory fashion it may bring that

7   complaint directly to the Department of Education. *Id.* § 33354(a)(2)(B).

8          To further facilitate control by the government, CIF is required to submit a report to the

9   Legislature and the Governor every seven years on its activities, goals, and objectives,

10  addressing such topics as the effectiveness of its governance structure in "providing leadership

11  for interscholastic athletics in secondary schools," the "quality of coaching and officiating,"

12  including "professional development for coaches and athletic administrators, and parent

13  education programs," and the "economic viability" of high school interscholastic athletics,

14  including "the promotion and marketing of interscholastic athletics." *Id.* §§ 33353(b)(1)(A),

15  (C),(F). CIF must also provide testimony to various policy committees of the Legislature at

16  hearings at which members of the public are encouraged to testify on information in CIF's

17  submitted reports. *Id.* § 33353(b)(3)(A).

18         All of these control and monitor mechanisms for the CIF Defendants are similar to the

19  mechanisms for oversight of the State Bar exerted by the California Supreme Court, which the

20  Ninth Circuit found to favor a finding of immunity. *Kohn*, 87 F.4th at 1035-36.

21                 **3.    The Treasury Factor Shows CIF Defendants Are Arms of the State**

22         The Ninth Circuit recognized that the third factor—CIF's "financial relationship to

23  California and its overall effects on California's treasury"—"is not dispositive." *Id.* at 1037.

24  CIF is a nonprofit public benefit organization, Cplt. ¶ 13, and does not derive all of its revenue

25  directly from the State. *See, e.g.*, Cplt. ¶ 121. But in times of need, the State has directly funded

26  CIF. For example, during the Covid-19 pandemic, the Legislature appropriated $10.5 million

27  from the General Fund to CIF "to be used to support the expenses associated with either the CIF

28  State or 10 CIF Section offices that have experienced significant revenue reductions in the 2020–

-13-

21 fiscal year."  Assembly Bill 167, 2021–2022 Reg. Sess. (Cal. 2021).  Although CIF has other

sources of revenue, the same was true of the State Bar in *Kohn*.  In concluding that the State Bar

was entitled to Eleventh Amendment immunity, the Ninth Circuit reasoned, "[g]iven that the

intent and control factors strongly favor the conclusion that California 'structured' the State Bar

to 'enjoy the special constitutional protection of the [s]tate[ ] [itself],' the third factor, placed in

its proper context, cannot overcome the first two."  *Kohn*, 87 F.4th at 1037 (quoting *Hess v. Port

Auth. Trans-Hudson Corp.*, 513 U.S. 30, 43-44 (1994)).

### B.    All Defendants Are Entitled to State-Action Antitrust Immunity Under *Parker v. Brown*

Defendants are also entitled to dismissal of the antitrust claims under the state-action

immunity doctrine set forth in *Parker v. Brown*, 317 U.S. 341 (1943), and its progeny.  State

action immunity bars antitrust actions that attempt to "restrain a state or its officers or agents

from activities directed by its Legislature."  *Id.* at 350-51.  The California Legislature and the

State Board of Education have essentially prohibited the kind of unfettered recruitment and

compensation of high school student-athletes that Plaintiff seeks, and CIF is empowered by the

Legislature to enact and enforce the very rules Plaintiff challenges in this lawsuit.  Such authority

is an exercise of sovereign authority, rendering entities like CIF and its Sections—and private

parties like the Media Defendants acting consistent with the CIF Defendants' exercise of

sovereign authority—immune from antitrust liability.  *Hass v. Ore. State Bar*, 883 F.2d 1453,

1456-57 (9th Cir. 1989); *Llewellyn v. Crothers*, 765 F.2d 769, 775 (9th Cir. 1985) (finding a

private party immune from suit because it "did no more than comply with the requirements of a

state scheme that itself was exempt from antitrust attack").

State-action immunity applies when the challenged restraint is "clearly articulated and

affirmatively expressed as state policy."  *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum,

Inc.,* 445 U.S. 97, 105 (1980) ("*Midcal*"); *Babb v. California Teachers Ass'n*, 378 F. Supp. 3d

857, 887 (C.D. Cal. 2019).  Here, California has adopted a policy of regulating secondary school

sports through CIF and has specifically prohibited high school officials from attempting to

unduly influence a student's decision to join a particular athletic team, prohibited students from

1   transferring for athletic reasons, and authorized the uncompensated use of athletes' names,

2   images, and likenesses in sports broadcasts and accounts.  The CIF rules that Plaintiff challenges

3   simply implement those specific policies.  That alone is enough to confer state-action immunity

4   on the CIF Defendants and the Media Defendants allegedly working in concert with them.  And

5   as explained below, the further requirement that some cases impose—that the entity at issue be

6   "actively supervised" by the State—does not apply here, but if it did it would be easily satisfied.

7           1.      **California Has a "Clearly Articulated" State Policy to Regulate High
                    School Athletics Through the CIF Defendants**

8

9           For the reasons already discussed *supra*, in Section I.A.1, CIF meets the clear articulation

10  requirement.  The Legislature very clearly delegated to CIF the authority to "enact and enforce

11  rules and regulations governing secondary school interscholastic athletics in the state of

12  California."  *Steffes*, 176 Cal. App. 3d at 742.  Moreover, state law need not expressly authorize

13  anticompetitive behavior to trigger immunity under *Parker*.  *Hass*, 883 F.2d at 1457, 1459 ("The

14  legislature need not detail or compel the specific anti-competitive actions at issue, nor need it

15  explicitly state that it expects the regulated party to 'engage in conduct that would have

16  anticompetitive effects.'" (quoting *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 42-43

17  (1985)); *Town of Hallie*, 471 U.S. at 42-43 (legislature need not "expressly state" in statute or

18  legislative history its intent for the delegated action to have anticompetitive effects).  Nor need

19  the statute "direct or compel the state agency to engage in the challenged activity" to satisfy the

20  clear articulation requirement.  *Hass*, 883 F.2d at 1459.  Instead, immunity applies to challenged

21  restraints that are simply the "foreseeable result" of the statutory authorization in question.  *City

22  of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 370-71 (1991) ("*Omni*") (applying

23  *Parker* exemption where challenged actions were an "authorized implementation of state policy"

24  and suppression of competition was a foreseeable consequence of passing of ordinance).

25          Here, the Legislature expressly permitted school "[g]overning boards" to enter into

26  agreements amongst themselves and with other schools via "associations or consortia" "for the

27  purpose of enacting and enforcing rules relating to eligibility for, and participation in,

28  interscholastic athletic programs among and between schools."  Cal. Educ. Code § 35179(b).

-15-

The Legislature expressed through statute its "intent" for CIF to implement policies concerning interscholastic athletic activities in secondary schools. *Id.* § 33353(a)(1). This necessarily entails the foreseeable result that CIF would implement and enforce rules for high school athletic eligibility, transfers, and marketing—the very rules challenged in the Complaint. *E.g.*, Cplt. ¶¶ 16, 42, 44, 54, 68, 85; Cal. Educ. Code § 33353(b)(1)(F). CIF, in carrying out its activities, including through its Sections, acts pursuant to clearly articulated state policy.

While such delegation would be sufficient, the legislative endorsement here extends much further and includes specifically approving or mandating many of the very policies challenged in this case. With regard to athletically motivated transfers, every school district employee and official who provides "supervision and instruction in interscholastic athletic programs and activities" is barred from "exerting undue influence in a pupil's decision to enroll in an athletic program at any public or private postsecondary educational institution." Cal. Educ. Code § 35179.7; *see also* Cal. Code. Regs., tit. 5, § 5596(*l*) (school officials must "[a]void recruitment of athletes from other schools"). Additionally, while certain California schools can maintain "open enrollment" policies that allow them to admit students from across the state, those schools are likewise prohibited from considering "whether or not a pupil should be enrolled based upon . . . athletic performance." Cal. Educ. Code § 48301(a)(1); *see also id.* § 48301(b) (stating that communications to parents of prospective students under so-called "open enrollment" may not "target individual parents . . . on the basis of a pupil's . . . actual or perceived . . . athletic skill"). Likewise, Section 3344(d) of the California Civil Code explicitly allows sports broadcasts and accounts to be aired and published without obtaining consent or paying anyone who appears in them. Cal. Civ. Code. § 3344(d). In sum, the challenged rules at issue here are fully aligned with "legislative policy," and are the foreseeable result of the Legislature's delegation to CIF. Thus, CIF and its Sections are immune from antitrust challenge. *Hass*, 883 F.2d at 1458; *Llewellyn*, 765 F.2d at 775 (extending same immunity to private parties following such a legislative policy).

MOTION TO DISMISS                                    Case No.: 3:25-cv-4603 LB

1

2

**2.    Although Not Required, the CIF Defendants That Implement the Challenged Restraints Are Actively Supervised by the State**

3    Because the challenged restraints are those of a state actor, the Defendants do not need to

4    show an additional requirement of "active supervision" to be entitled to *Parker* immunity.  *See*

5    *Hass*, 883 F.2d at 1459-61.  But, to the extent this showing is necessary, it is met here.  CIF is

6    closely regulated by the state Department of Education.  *See* Cal. Educ. Code § 33354.  It is

7    required to submit reports to the Legislature and Governor on an ongoing, periodic basis

8    regarding its activities, goals, and objectives, including concerning the effectiveness of its

9    governance structure in "providing leadership for interscholastic athletics in secondary schools"

10    and the "economic viability" of high school interscholastic athletics, including "the promotion

11    and marketing of interscholastic athletics."  *Id.* §§ 33353(b)(1)(A), (F).  CIF provides testimony

12    to various policy committees of the Legislature at hearings at which members of the public are

13    encouraged to testify on information in CIF's submitted reports.  *Id.* § 33353(b)(3)(A).  CIF must

14    also allow public comment and hearings on its policies and practices at regularly scheduled

15    Federated Council meetings, and comply with the Public Records Act and the Ralph M. Brown

16    Act.  *Id.* §§ 33353(a)(2), 33353(a)(5), 33353(b)(2)(A), 33353(b)(2)(B), 33353(c)(3).

17    And, when the Legislature is dissatisfied with any of aspect of interscholastic athletics, it

18    enacts new laws accordingly.  For example, in 2023, the Legislature amended Section 35333 of

19    the California Education Code to require that CIF develop methods to track and report racial

20    discrimination, harassment, or hazing that might occur at sporting events.  2023 Cal. Legis. Serv.

21    Ch. 366 (A.B. 1327).  All of this shows that both the Department of Education and the State

22    Legislature have "the power to exercise control over" the CIF Defendants and "in fact exercise

23    [their] power."  *Snake River Valley Elec. Ass'n v. PacifiCorp*, 357 F.3d 1042, 1049 (9th Cir.

24    2004).  The CIF Defendants, who allegedly implement the challenged restraints, are therefore

25    "actively supervised" by the State.  *See Green v. Peoples Energy Corp.*, No. 02 C 4117, 2003

26    WL 1712566, at *7 (N.D. Ill. Mar. 28, 2003) ("lengthy hearings" held "on a consistent basis"

27    constituted active supervision); *In re Pa. Title Ins. Antitrust Litig.*, No. 08cv1202-WY, 2010 WL

28

MOTION TO DISMISS                                                      Case No.: 3:25-cv-4603 LB

1  4974942, at *14 (E.D. Pa. Nov. 30, 2010) (mandated report filing and public hearings were

2  "indicia of active supervision").

3  **3.    State-Action Immunity Extends to the Media Defendants**

4  Although not state actors themselves, the Media Defendants are also entitled to immunity

5  to the extent they act consistent with policies promulgated by CIF that are, in turn, "mandated by

6  the statutes, rules, and regulations of [State] governmental entities." *Llewellyn*, 765 F.2d at 775

7  (finding a private party immune from suit regardless of any lack of "active supervision" because

8  it "did no more than comply with the requirements of a state scheme that itself was exempt from

9  antitrust attack"); *see also Sanders v. Lockyer*, 365 F. Supp. 2d 1093, 1104 (N.D. Cal. 2005)

10  ("Where there is direct state action affording immunity, the immunity extends equally to private

11  parties and state actors."), *aff'd sub nom. Sanders v. Brown*, 504 F.3d 903 (9th Cir. 2007);

12  *AmeriCare MedServices, Inc. v. City of Anaheim*, No. 8:16-cv-1703-JLS-AFMx, 2017 WL

13  5592892, at *2 (C.D. Cal. Apr. 21, 2017), *aff'd*, 735 F. App'x 473, 475 (9th Cir. 2018)

14  (interpreting *Parker* immunity broadly to protect a private party to a contract from antitrust

15  liability when the other contracting party is a state actor).  Thus, even if the Media Defendants

16  could be targeted for the consequences of CIF's rules and California law they had no hand in

17  crafting—and as explained in the Media Defendants' separate motion, they cannot—the Media

18  Defendants would simply be complying with the requirements of a "state scheme" immune from

19  antitrust liability.  *Llewellyn*, 765 F.2d at 775.  Accordingly, they would themselves be immune

20  from suit.

21  **C.    The Media Defendants Are Also Immune Under *Noerr-Pennington***

22  Similarly, even if the Media Defendants were plausibly alleged to have participated in the

23  adoption of the policies at issue—and Plaintiff does not allege that the Media Defendants had

24  any involvement or input in adopting, implementing, or enforcing CIF's rules at issue—the

25  Media Defendants also would be immune under the *Noerr-Pennington* doctrine for attempting to

26  influence government action.  As the Supreme Court explained in *Omni*, "*Parker* and *Noerr* are

27  complementary expressions of the principle that the antitrust laws regulate business, not politics;

28

MOTION TO DISMISS                                    Case No.: 3:25-cv-4603 LB

1    the former decision protects the States' acts of governing, and the latter the citizens' participation

2    in government."  499 U.S. at 383.

3           Under *Noerr-Pennington*, "[p]rivate actors are immune from antitrust liability for

4    petitioning the government," such as when they "*enter contracts with the government.*"  *Sanders*,

5    504 F.3d at 912 (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972))

6    (emphasis added); *see also Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810

7    F.2d 869, 879 (9th Cir. 1987) (dismissing Sherman Act claims against state executives who were

8    entitled to immunity from liability for actions taken pursuant to their statutory authority).  In

9    *Sanders*, the California Legislature authorized the California attorney general to enter into a

10   settlement agreement with certain tobacco defendants and the Legislature also passed multiple

11   statutes to help effectuate the settlement.  *Id.* at 906-09.  As a result, tobacco prices increased, but

12   the court found the tobacco defendants' negotiation of and performance under the settlement

13   immune from suit under *Noerr-Pennington* because the complaint was "based on injuries caused

14   directly by government action."  *Id.* at 914.  Here, too, the Media Defendants are alleged to have

15   negotiated and performed under broadcast, marketing, and advertising contracts with CIF and

16   therefore are entitled to immunity.

17   **II.    PLAINTIFF LACKS ARTICLE III AND ANTITRUST STANDING**

18          Plaintiff must demonstrate standing for "each claim he seeks to press."  *DaimlerChrysler*

19   *Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)

20   (requiring plaintiff to "clearly . . . allege facts demonstrating" each element at the pleading stage)

21   (cleaned up).  Applying that principle to putative class actions, a class representative cannot

22   assert a claim on behalf of absent class members that the representative could not bring himself.

23   *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026 (N.D. Cal. 2007);

24   *see also In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 926-27 (N.D. Cal. 2015).

25   Plaintiff here lacks constitutional standing to bring claims on behalf of the putative class because

26   he has failed to allege any concrete, particularized harm to him stemming from the challenged

27   CIF rules.  Even if Plaintiff had constitutional standing, he would not meet the heightened

28

MOTION TO DISMISS                                          Case No.: 3:25-cv-4603 LB

1    requirements for standing applicable to private actions under the antitrust laws.  And finally, as a

2    former high school student-athlete, Plaintiff lacks standing to seek prospective injunctive relief.

3    **A.    Plaintiff Fails to Allege Injury in Fact with Respect to Any of the Challenged**
      **Restrictions**

4

5    The "irreducible constitutional minimum" of Article III standing requires that plaintiff

6    has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

7    defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 578

8    U.S. at 338 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The alleged injury

9    in fact must be both "concrete and particularized" and "actual or imminent, not conjectural or

10   hypothetical."  *Id.* at 339 (citation omitted).  Courts routinely dismiss complaints on Article III

11   grounds that offer only conclusory allegations of injury.  *See, e.g.*, *Somers v. Apple, Inc.*, 729

12   F.3d 953, 963-66 (9th Cir. 2013) (rejecting plaintiff's conclusory allegations for lack of

13   specificity even though the "complaint leaves open the possibility that [Plaintiff] might later

14   establish some set of undisclosed facts"); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,

15   903 F. Supp. 2d 880, 904-06 (C.D. Cal. 2012) (dismissing antitrust claims for lack of Article III

16   standing due to "speculative and conclusory assertions"); *Saxton v. Cnty. of Sonoma*, No. 21-cv-

17   09499-SI, 2022 WL 3549779, at *2 (N.D. Cal. Aug. 17, 2022) ("the plaintiff has the burden of

18   alleging and proving that he has standing to sue").

19   Plaintiff challenges three categories of CIF rules:  (1) prohibitions or limits on

20   compensation for "athletic labor"; (2) limits on "athletically motivated" school transfers; and (3)

21   limits on compensation to athletes for the use of their NIL.  As discussed below, Plaintiff fails to

22   allege particularized harm to himself as to any of these rules.

23   **1.    Plaintiff Does Not Allege He Would Have Received Compensation for**
      **His "Athletic Labor" Greater Than the Alleged Monetary Limit**

24

25   Plaintiff alleges that student-athletes are prohibited from receiving "from any and all

26   sources, athletic awards totaling more than $250.00 in value" for "[a]ccomplishments in any

27   regular CIF high school competition event . . . [or a] recognition award program such as 'Player

28   of the Week' or 'Player of the Month,'" Cplt. ¶¶ 45, 46; that there is a $500 in value cap on

-20-

athletic awards "for any post-regular season CIF high school competition or recognition program," Cplt. ¶ 46; and that student-athletes are prohibited from "[r]eceiving payment for coaching a team in CIF competition." Cplt. ¶ 47.

But Plaintiff fails to allege that these caps affected his personal compensation. Far from alleging that he hit these caps and was prevented from earning more, Plaintiff asserts that he "never received any personal compensation from CIF or other Defendants' use" of his athletic labor at all. Cplt. ¶10. He nowhere alleges that he received or would have received "athletic awards" greater than the $250 and $500 limits absent the challenged rules. Allegations that he was a "valuable asset to the high schools for which he played," and assertions that by "participating in CIF events," his athletic labor "helped generate substantial revenues" derived from broadcasting agreements, ticket sales, and sponsorships, Cplt. ¶ 12, are not sufficient. *See Somers*, 729 F.3d at 965 (dismissal warranted because complaint failed to "allege specific facts that raise an antitrust claim above the speculative level."); *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d at 927 (finding a lack of Article III standing because injury allegations were insufficient).

Similarly, general allegations that but for CIF's rules, *some* high school student-athletes would receive greater compensation are of no help to Plaintiff. *See, e.g.*, Cplt. ¶¶ 43, 44, 99, 141-43, 151-52. That other members of the putative class could have standing does not excuse Plaintiff from establishing his standing. Moreover, these allegations are themselves conclusory and speculative, without identifying a single specific example of a class member who would have received greater compensation but for the operation of CIF's rules.

### 2.    Plaintiff Does Not Allege He Was Injured by CIF Transfer Rules

Plaintiff challenges CIF's rules that allegedly "categorically forbid student-athletes from transferring between CIF member schools for 'athletically motivated' reasons" and rules against "undue influence" to attend a specific CIF-affiliated school. Cplt. ¶¶ 54, 59, 68. But he fails to allege that his own "ability to transfer" was "curtailed" in any way—let alone "dramatically" so. Cplt. ¶ 56. To the contrary, Plaintiff alleges just the opposite: that he successfully transferred

1  between his sophomore and junior year from El Cerrito High School to Pittsburg High School.

2  Cplt. ¶ 8.

3          **3.    Plaintiff Does Not Allege He Would Have Received Compensation for
              His NIL but for the Alleged Rule Restricting the Use of School or
4          Team Names and Identifying Marks**

5          Plaintiff alleges that CIF's rules "limit the ability of CIF student-athletes to profit from"

6  the use of their NIL to a "relatively narrow grant." Cplt. ¶¶ 76-78. Namely, the rule "permit[s]

7  student-athletes to earn money from third parties for the use of their NIL, so long as any resulting

8  endorsements and advertising content are not recorded on school property, do not show the

9  student in their athletic uniform or school-branded attire, and do not make use of the school or

10 team name or other identifying marks." Cplt. ¶ 77.

11         Essentially, Plaintiff complains that the rule restricts student athletes from earning NIL

12 payments while wearing their high school uniforms or identifying marks. But he does not allege

13 that he would have earned any NIL payment but for the challenged rule. In fact, he does not

14 allege that he earned any NIL money at all in high school, much less provide specifics about

15 particular transactions that would have occurred but for his inability to profit off his high

16 school's identifying marks. This deficiency is not cured by his bare allegation that he has

17 "already begun to receive NIL compensation in connection with his collegiate athletic career for

18 Boise State University." Cplt. ¶ 11. The fact that he is receiving some NIL compensation in

19 college (which is not surprising given the rise of collegiate licensing collectives) says nothing

20 about whether he would have earned additional NIL compensation in high school but for CIF

21 rules.

22         **B.    Plaintiff Lacks Standing to Sue Under the Antitrust Laws**

23         Plaintiff likewise cannot establish antitrust standing. "Antitrust standing is distinct from

24 Article III standing." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 n.3 (9th

25 Cir. 1999) (citation omitted); *see Associated Gen. Contractors of Cal., Inc. v. Cal. State Council

26 of Carpenters*, 459 U.S. 519, 534 (1983) ("Congress did not intend the antitrust laws to provide a

27 remedy in damages for all injuries that might conceivably be traced to an antitrust violation.").

28 Among the requirements for antitrust standing is that the plaintiff has suffered an "antitrust

-22-

injury":  (1) unlawful conduct that (2) causes an injury to the plaintiff, (3) flows from that which

makes the conduct unlawful, and (4) is of the type the antitrust laws were intended to prevent.

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 487-90 (1977); *Am. Ad Mgmt., Inc.*,

190 F.3d at 1055; *MiCamp Solutions, LLC v. Visa Inc.*, No. 23-cv-065351-HSG, 2025 WL

892570, at *5 (N.D. Cal. Mar. 24, 2025).  Injuries that are derivative from the alleged conduct

are not an appropriate basis for an antitrust claim.  *Am. Ad Mgmt.*, 190 F.3d at 1055-56 (citing

*Brunswick*, 429 U.S. at 480); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903

F. Supp. 2d at 904.  The alleged harm must also not be speculative.  *City of Oakland v. Oakland

Raiders*, 20 F.4th 441, 455, 458-61 (9th Cir. 2021); *MiCamp Solutions, LLC*, 2025 WL 892570,

at *7 (finding no antitrust standing because complaint contained "conclusory allegations …

devoid of factual support").  Here, Plaintiff's conclusory allegations fail to plausibly show that

he suffered any injury, much less one that would constitute antitrust injury.  *MiCamp Solutions,

LLC*, 2025 WL 892570, at *5, 7 (dismissing complaint where plaintiff failed to plausibly allege

cognizable antitrust injury to merit standing).

      In fact, there is a different and more proximate cause for the alleged injuries:  state laws

that proscribe schools' recruitment and compensation of student athletes.  Antitrust standing is

lacking where plaintiff's injuries were "independently caused by something other than the

antitrust violation."  *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356,

1365-66 (9th Cir. 1986).[4]  As described *supra*, California law and regulations prohibit school

---

[4]    *See also Modesto Irrigation Dist. v. Pacific Gas & Elec. Co.*, 309 F. Supp. 2d 1156, 1170 (N.D. Cal. 2004) (holding that plaintiff did not suffer antitrust injury where plaintiff could not prove it was injured but-for the alleged anticompetitive conduct, given the lack of necessary government approval to service Pittsburg), *aff'd*, 158 F. App'x 807 (9th Cir. 2005); *id.* at 1169-70 ("Courts have long recognized that an action under the antitrust laws will not lie where the business conducted by the plaintiff, and alleged to have been restrained by the defendant, was itself unlawful.") (internal quotation marks omitted); *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785, 791-92 (8th Cir. 2006) (affirming district court finding that plaintiffs suffered no antitrust injury and thus lacked antitrust standing, where the alleged injuries flowed not from defendants' conduct but from federal statutory and regulatory scheme); *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 165 (3d Cir. 2017) ("That a regulatory or legislative bar can break the chain of causation in an antitrust case is beyond fair dispute."); *RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 15 (1st Cir. 2001) (plaintiff lacked antitrust standing because it was the state's regulatory scheme that excluded plaintiff from the market, not

1    district employees and officials who provide "supervision and instruction in interscholastic

2    athletic programs and activities" from "exerting undue influence in a pupil's decision to enroll at

3    an athletic program at any public or private postsecondary educational institution."  Cal. Educ.

4    Code § 35179.7; *see also* Cal. Code. Regs., tit. 5, § 5596(*l*) (school officials must "[a]void

5    recruitment of athletes from other schools.").  These standards mirror the CIF rules Plaintiff

6    challenges.  *See* Cplt. ¶ 66 ("'Undue influence' is any act, gesture, or communication (including

7    accepting material or financial inducement to attend a CIF member school for the purpose of

8    engaging in CIF competition regardless of the source) . . . .'") (quoting CIF Bylaw 510(A)).

9        The California Education Code also precludes schools with so-called "open enrollment"

10   policies from considering "whether or not a pupil should be enrolled based upon . . . athletic

11   performance," Cal. Educ. Code § 48355(a)(1), and dictates that any communications to the

12   parents of prospective students under "open enrollment" may not "target individual parents . . .

13   on the basis of a pupil's . . . actual or perceived . . . athletic skill."  *Id.* § 48301(b).  These rules

14   mirror the challenged CIF rules on recruitment and transfers and would work to prevent the very

15   relief Plaintiff seeks through this lawsuit.  *See* Cplt. ¶¶ 66, 68, 74.

16       In addition, Cal. Civ. Code § 3344(d) precludes the possibility of payments to Plaintiff or

17   any high school athletes for their alleged BNIL.  Section 3344(d) explicitly allows NIL use in

18   broadcasting and providing accounts of sporting events, including high school sports, without

19   prior consent.  *See Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 410-12, 418

20   (Cal. Ct. App. 2001) (defendant's use of "factual data concerning the [baseball] players, their

21   performance statistics, and verbal descriptions and video descriptions of their play" in web sites

22   and video clips constituted a "public affairs" use exempt from consent under section 3344(d) and

23   did not violate players' rights of publicity).  Broadcasters and related entities need not

24   compensate or receive approval from the student-athletes or their guardians before using their

25   NIL in broadcasts.  In fact, based on § 3344(d), student-athletes do not control their BNIL,

26

27   _____

28   defendant's conduct); *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 265 (3d Cir.
     1998) (plaintiff had no antitrust standing because "any injury suffered by the [plaintiff] did not
     flow from the defendants' conduct" but, rather, from state regulations).

MOTION TO DISMISS                                    Case No.: 3:25-cv-4603 LB

1    cannot negotiate for their broadcast footage, and have no way to prevent anyone from

2    broadcasting their NIL.

3          Plaintiff cannot claim antitrust injury from failure to compensate him for appearing in

4    broadcasts and other coverage because such an injury would flow, not from CIF rules, but

5    directly from California law.  *See Marshall v. ESPN Inc. (Marshall I)*, 111 F. Supp. 3d 815, 835

6    (M.D. Tenn. 2015) (holding that, because plaintiff does not have the right "to be paid for

7    appearing in television broadcasts of games" or for accounts of those games, he "cannot plead

8    any antitrust injury" to the extent it arises from purported infringements of those rights), *aff'd*

9    *sub nom*, *Marshall v. ESPN*, 668 F. App'x 155 (*Marshall II*) (6th Cir. 2016); *see also Members*

10   *of N.C. State Univ.'s 1983 NCAA Men's Basketball Championship Team v. NCAA*,

11   24CV017715-910, 2025 WL 2256311, at *13-14 (N.C. Super. Ct. Aug. 6, 2025) (similarly

12   dismissing antitrust claims seeking compensation for lost NIL deals in game broadcasts because

13   those claims were based on an alleged conspiracy "to deprive [the plaintiffs] of legal rights that

14   they do not actually possess").[5]  Indeed, courts overwhelmingly recognize that broadcasting or

15   providing accounts of all or portions of sporting events does not violate an athlete's right of

16   publicity, if such a right even exists.  *See, e.g., Dryer v. Nat'l Football League,* 55 F. Supp. 3d

17   1181, 1195-1200 (D. Minn. 2014), *aff'd*, 814 F.3d 938 (8th Cir. 2016); *Nat'l Football League v.*

18   *Alley,* 624 F. Supp. 6, 10 (S.D. Fla. 1983); *Gionfriddo,* 94 Cal. App. 4th at 406-18;  *Somerson v.*

19   *World Wrestling Ent., Inc.*, 956 F. Supp. 2d 1360, 1368 (N.D. Ga. 2013).  Plaintiff "cannot have

20   been injured by a purported conspiracy to deny [him] the ability to sell non-existent rights."

21   *Marshall I*, 111 F. Supp. 3d at 835.  Plaintiff's purported injury from failing to receive BNIL

22   money for any alleged broadcasts of his athletic performances is the result of California law, not

23   CIF rules.

24

25   [5]    The court in *House v. NCAA* distinguished *Marshall I* on the basis that "[a] plaintiff can
     establish injury in fact in this context merely by showing that the restraint deprived it of the
26   opportunity to receive the compensation."  545 F. Supp. 3d 804, 816-17 (N.D. Cal. 2021).  But
     Plaintiff does not set out a theory like the one posed in *House* that even though broadcasters need
27   not pay directly for "broadcast NIL" schools would  "share their broadcasting revenue . . . to the
     extent that doing so would help the schools and conferences compete with other schools and
28   conferences for recruits."  *Id.*

1

**C.    Plaintiff Lacks Standing to Seek Injunctive Relief**

2

Even if Plaintiff has sufficiently alleged an injury-in-fact and antitrust injury (which he

3

has not), he has failed to establish that he has standing to obtain injunctive relief.  *See*

4

*DaimlerChrysler Corp.*, 547 U.S. at 352 (plaintiff must demonstrate standing for "each claim he

5

seeks to press"); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) (plaintiff must

6

"demonstrate standing separately for each form of relief sought"); *see also Jones v. Micron Tech.*

7

*Inc.*, 400 F. Supp. 3d 897, 907 (N.D. Cal. 2019) ("Standing is claim-and-relief-specific:  a

8

plaintiff must establish Article III standing for each of his claims and for each form of relief he

9

seeks.") (internal quotations omitted).  Plaintiff is a former high school student-athlete who can

10

no longer benefit from any change in CIF rules.  *See House*, 545 F. Supp. 3d at 816, 820

11

(dismissing former student-athlete's claims for injunctive relief without leave to amend).

12

Plaintiff concedes he is a "former CIF athlete" who competed for the 2021, 2022, 2023,

13

and 2024 seasons.  Cplt. ¶ 8.  As of the date of the Complaint filing, Plaintiff was already

14

"signed to play for the Boise State Broncos after graduating high school in 2025."  Cplt. ¶ 9.

15

There is nothing in the Complaint to suggest there is any prospect of his again becoming a high

16

school student-athlete subject to CIF rules (nor could he; under CIF rules he does not challenge,

17

limiting high school athletes to eight consecutive semesters of eligibility).  Accordingly,

18

Plaintiff's claim for injunctive relief should be dismissed.  *See B.C. v. Plumas Unified Sch. Dist.*,

19

192 F.3d 1260, 1264 (9th Cir. 1999) (former student lacked standing to seek injunctive relief

20

because no risk of harm in the future); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

21

364-65 (2011) (plaintiffs no longer working for defendant had no claim for injunctive relief

22

concerning employment practices); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th

23

Cir. 2017) (former employee's injunctive relief claim was moot for inability to show he could

24

reasonably expect to benefit from the injunctive relief sought).

25

**III.    THE ALLEGED RELEVANT MARKETS ARE FATALLY DEFECTIVE**

26

Under the rule of reason, Plaintiff is required to prove anticompetitive effects in a

27

relevant market.  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) ("Plaintiffs must

28

plead a relevant market to state an antitrust claim under the Sherman Act, unless they assert a per

-26-

1   se claim.") (citing *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044-45 (9th Cir.

2   2008)).  Adequately defining a relevant market is necessary because it "provides the basis on

3   which to balance competitive harms and benefits of the restraint at issue." *L.A. Mem'l Coliseum*

4   *Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1392 (9th Cir. 1984) (internal citation

5   omitted).  "[A] complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant

6   market' definition is facially unsustainable." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d

7   1038, 1045 (9th Cir. 2008); *see also Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir.

8   2001)

9       Relevant markets are defined on the basis of reasonable interchangeability.  *Big Bear*

10  *Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (affirming dismissal of

11  antitrust claim when plaintiff failed adequately to allege that asserted market was the "area of

12  effective competition" and "there are no other goods or services . . . reasonably

13  interchangeable").  "Where the plaintiff fails to define its proposed relevant market with

14  reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a

15  proposed relevant market that clearly does not encompass all interchangeable substitute products

16  even when all factual inferences are granted in plaintiff's favor, the relevant market is legally

17  insufficient and a motion to dismiss may be granted."  *In re eBay Seller Antitrust Litig.*, 545 F.

18  Supp. 2d 1027, 1031 (N.D. Cal. 2008) (internal quotation omitted); *see also Tanaka*, 252 F.3d at

19  1062-63 (9th Cir. 2001) (affirming dismissal under rule of reason analysis where plaintiff failed

20  to identify an "appropriately defined" market).

21      Plaintiff alleges two separate relevant markets:  (1) "the statewide market for the athletic

22  labor of CIF high school student-athletes"; and (2) a "national market for the use of California

23  high school student-athletes' [NIL] for commercial and promotional purposes, including in live

24  or prerecorded broadcasts of athletic competitions (Broadcast Name, Image, and Likeness, or

25  BNIL) and in sports data and marketing software."  Cplt. ¶¶ 91, 107.  Both definitions fail

26  because Plaintiff fails to allege any facts supporting the conclusion that these are plausible

27  markets.

28

-27-

1

**A.     The Alleged "Statewide Market for Athletic Labor" Market Is Implausible**

2

Plaintiff first alleges a relevant market as "the statewide market for the athletic labor of

3

CIF high school student-athletes in the various sports in which they compete (the California High

4

School Athletic Labor Market), in which each sport can be considered an independent

5

submarket." Cplt. ¶ 91. This proposed market makes little sense because it is both too broad and

6

too narrow.

7

The alleged market is too broad because the vast majority of high school students in

8

California would not relocate (and high schools would not recruit), across the state but for CIF's

9

restrictions on recruiting and athletically motivated transfers. Cplt. ¶¶ 99-101. It is not plausible

10

on its face to suggest that a high school student or her family would consider a school in an

11

entirely different part of the state to be a reasonably interchangeable purchaser of the student's

12

athletic labor. In general, a high school student will be limited by her parent's residence and

13

rules governing public high school assignments. *See* Cal. Educ. Code §§ 48200, 48204(a)

14

(generally requiring students to attend high school within their district).

15

Conversely, in the rare case of extraordinary athletes—such as the example Plaintiff

16

provides about the sons of LeBron James and Dwyane Wade—state boundaries are likely of no

17

importance and the proposed market is too narrow. The handful of high school students with

18

unlimited resources and extraordinary skills would surely transfer to a school outside of

19

California if they believed it would materially improve their professional prospects. *See* Cplt. ¶

20

96; *see also id.* ¶ 98 (alleging that 14 high school football players were once recruited from

21

American Samoa—a United States territory—to play at Franklin High School). In short, the

22

attempt to group all student athletes into a single labor market results in a geographic market that

23

is incoherent.

24

**B.     The Alleged National Market for NIL Use Is Implausible**

25

Plaintiff's second proposed relevant market is "the national market for the use of

26

California high school student-athletes' names, images, and likenesses for commercial and

27

promotional purposes, including in live or prerecorded broadcasts of athletic competitions

28

(Broadcast Name, Image, and Likeness, or BNIL) and in sports data and marketing software."

-28-

1   Cplt. ¶ 107.  But the Complaint makes no attempt to plead facts establishing the plausibility of

2   this market from the perspective of reasonable interchangeability.  The Complaint does not

3   explain why California high school student-athlete NIL is not interchangeable with NIL of

4   student-athletes from other states.  Nor does it explain why high school student-athlete NIL is

5   distinct from non-athlete NIL, college student-athlete NIL, or professional-athlete NIL.  This

6   failure by Plaintiff to address reasonable interchangeability or lack thereof is fatal to his claims.

7   *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011) ("The

8   failure to allege a product market consisting of reasonably interchangeable goods renders the

9   [complaint] facially unsustainable and appropriate for dismissal.") (internal quotations omitted).

10      The proposed market is also fatally flawed because Plaintiff fails to support it with

11  plausible allegations that the challenged restrictions have had "*significant* anticompetitive

12  effects" throughout the market.  *Tanaka*, 252 F.3d at 1064 (emphasis added); *see also Concord

13  Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 53 (2d Cir. 2016) (noting that anticompetitive

14  effects must be "market-wide").  Plaintiff alleges that CIF serves 800,000 student athletes each

15  year.  Cplt. ¶ 15.  These athletes compete across dozens of sports, from badminton to baseball.  It

16  is implausible that the challenged rules would have a significant, market-wide effect on all, or

17  even a meaningful number, of those athletes, who could not possibly monetize themselves in this

18  fashion.  A purported market in which almost all sellers have nothing to sell is not plausible.  *See

19  Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 956 (9th Cir. 2023) (rejecting markets that "lack

20  sufficient clarity"); *Person v. Google, Inc.*, No. C 06-7297 JF (RS), 2007 WL 832941, at *4

21  (N.D. Cal. Mar. 16, 2007) (proposed relevant market including anyone who operates a website

22  was vague and overbroad); *see also Int'l Boxing Club of N.Y., Inc. v. United States*, 358 U.S.

23  242, 249-50 (1959) (noting that even though all boxing matches "include[] one ring, two boxers

24  and one referee," championship boxing matches are in a separate market than other matches

25  because the "market is composed of products that have reasonable interchangeability for the

26  purposes for which they are produced—price, use and qualities considered.").  Further, a portion

27  of this proposed market—that involving "BNIL"—cannot exist because Cal. Civ. Code

28  § 3344(d) precludes any remuneration for it.  *See* Section II.B, *supra*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   PLAINTIFF'S STATE LAW CLAIMS AGAINST THE CIF DEFENDANTS ARE EQUALLY DEFECTIVE

In addition to his federal antitrust claims (Counts 1, 2), Plaintiff asserts claims under the Cartwright Act (Count 3 and 4), the Unfair Competition Law (UCL) (Count 5), and unjust enrichment (Count 6) against the CIF Defendants.  These claims fail for the same or similar reasons as the federal claims.[6]

The Cartwright Act was "modeled after the Sherman Act," and thus analysis under it "mirrors [that] under federal law."  *StubHub, Inc. v. Golden State Warriors, LLC*, No. C 15-1436 MMC, 2015 WL 6755594, at *4 (N.D. Cal. Nov. 5, 2015) (quoting *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001)).  California courts often look to federal precedents under the Sherman Act for guidance, applying the same analysis under either statute. *See, e.g.*, *Universal Grading Serv. v. eBay, Inc*., No C-09-2755 RMW, 2012 WL 70644, at *10 (N.D. Cal. Jan. 9, 2012) (holding that interpretation of the Sherman Act is "applicable to the Cartwright Act"); *Roth v. Rhodes*, 25 Cal. App. 4th 530, 542 (1994); *Marin Cnty. Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 925 (1976) (holding that "federal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act").  Here, for the same reasons Plaintiff's Sherman Act claims fail, his Cartwright Act claim should also be dismissed. *nSight, Inc. v. PeopleSoft, Inc.*, 296 F. App'x 555, 557 n.3 (9th Cir. 2008) (affirming dismissal of Cartwright claim because plaintiff's Sherman Act claim was deficient under Rule 12(b)(6)); *StubHub, Inc.*, 2015 WL 6755594, at *4; *Sidibe v. Sutter Health*, No. C 12-04854 LB, 2013 WL 2422752, at *17 (N.D. Cal. June 3, 2013) (holding that because plaintiffs' exclusive dealing allegations failed to state a claim under Sherman Act Section 1, they "fail[ed] to state a Cartwright Act claim for the same reasons").

UCL claims can be dismissed where the Sherman Act and Cartwright Act claims for the same alleged anticompetitive behavior are insufficiently pled.  *Jones*, 400 F. Supp. 3d at 923.

---

[6]   Plaintiff originally brought these claims against both the CIF Defendants and the Media Defendants.  Cplt. ¶¶ 227-59.  However, they were later dismissed as against the Media Defendants.  See Dkt. 57.

-30-

1    Plaintiff alleges that the challenged conduct is "unfair, unlawful, or fraudulent [under Section

2    17200 of the California Business & Professions Code] because, *inter alia*, it violates state and

3    federal antitrust laws and common law principles of unjust enrichment." Cplt. ¶ 251. But a

4    plaintiff cannot "plead around" an "absolute bar to relief" by "recasting the cause of action as

5    one for unfair competition. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

6    163, 182 (1999). For these reasons, Plaintiff's UCL claim also must be dismissed.

7    *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x. 554, 557 (9th Cir. 2008) (where "the same

8    conduct is alleged to support both a plaintiff's federal antitrust claims and state-law unfair

9    competition claim, a finding that the conduct is not an antitrust violation precludes a finding of

10   unfair competition."); *Digital Sun v. Toro Co*., No. 10-CV-4567-LHK, 2011 WL 1044502, at *5

11   (N.D. Cal. Mar. 22, 2011) ("Because the Sherman Act violation is insufficiently pled, it follows

12   that [plaintiff] has also failed to plead any violation of the Unfair Competition Law.").

13          Lastly, Plaintiff's unjust enrichment claim fails because California does not recognize a

14   free-standing claim or independent cause of action for unjust enrichment. *See, e.g.*, *Levine v.

15   Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010); *Durell v. Sharp Healthcare*, 183 Cal.

16   App. 4th 1350, 1370 (2010) ("There is no cause of action in California for unjust enrichment.");

17   *United Food & Comm. Workers Local 1776 v. Teikoku Pharma USA, Inc*., 74 F. Supp. 3d 1052,

18   1091 (N.D. Cal. 2014) ("[U]njust enrichment is not an independent cause of action"); *Ham v.

19   Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014) (same). Even if unjust

20   enrichment were permitted as an independent cause of action, the Complaint fails to allege

21   wrongful conduct that could support such a claim. *See Levine*, 189 Cal. App. 4th at 1138.

22   Plaintiff has not plausibly alleged that the CIF Defendants retained a benefit at his expense or

23   that the CIF Defendants have been unjustly enriched. *See Cal. Crane Sch., Inc. v. Google LLC*,

24   722 F. Supp. 3d 1026, 1041-42 (N.D. Cal. 2024) (granting motion to dismiss plaintiff's unjust

25   enrichment claim where plaintiff also failed to adequately plead claims under the Sherman Act);

26   *see Pistacchio v. Apple Inc.*, No. 4:20-cv-07034-YGR, 2021 WL 949422, at *3 (N.D. Cal. Mar.

27   11, 2021) (finding conclusory allegations of "supracompetitive prices" did not state an unjust

28   enrichment claim). Plaintiff's unjust enrichment claim is also subject to dismissal because it is

-31-

duplicative of Plaintiff's defective antitrust claims. *See Lee v. Nature's Path Food, Inc.*, No. 23-00751, 2023 WL 7434963, at *6 (S.D. Cal. Nov. 9, 2023) (dismissing duplicative unjust enrichment claims when Plaintiffs' antitrust claims were dismissed); *see also Walcoff v. Innofoods USA, Inc.*, No. 22-cv-1485, 2023 WL 3262940, at *9 & n.12 (S.D. Cal. May 4, 2023) (dismissing unjust enrichment claim stemming from plaintiff's defective consumer protection claims); *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1188 (N.D. Cal. 2021) (dismissing unjust enrichment claim because "plaintiff does not identify any independent theory of unjust enrichment that does not rise or fall with her statutory claims").

**CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated:  August 25, 2025

ARNOLD & PORTER KAYE SCHOLER LLP


By: /s/ *Daniel B. Asimow*
        Daniel B. Asimow

DANIEL B. ASIMOW (Bar No. 165661)
daniel.asimow@arnoldporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:        415.471.3100
Facsimile:        415.471.3400

C. SCOTT LENT (*admitted pro hac vice*)
scott.lent@arnoldporter.com
OMAR DEBS (*pro hac vice forthcoming*)
omar.debs@arnoldporter.com
ESTHER H. SOHN (*admitted pro hac vice*)
esther.sohn@arnoldporter.com
250 W 55th Street
New York, NY  10019
Telephone:        212.836.8000
Facsimile:        212.836.8689

RYAN Z. WATTS (*admitted pro hac vice*)
Ryan.watts@arnoldporter.com
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: 202.942.5000
Facsimile: 202.942.5999

-32-

1

2
               *-and-*

3
               SPINELLI, DONALD & NOTT

4
               J. SCOTT DONALD  (Bar No. 158338)
               scottd@sdnlaw.com

5
               300 University Avenue, Suite 100
               Sacramento, CA 95825

6
               Telephone: 916.448.7888
               Facsimile:  916.488.6888

7

8
               *Attorneys for Defendants California Interscholastic*
               *Federation; Central Section of California Interscholastic*

9
               *Federation; Central Coast Section; California Interscholastic*
               *Federation; CIF Los Angeles City Section; North Coast*

10
               *Section of the California Interscholastic Federation; Northern*
               *Section California Interscholastic Federation; Oakland*

11
               *Athletic League; CIF Oakland Section; California*
               *Interscholastic Federation–Sac Joaquin Section; California*

12
               *Interscholastic Federation; San Diego Section; California*
               *Interscholastic Federation San Francisco City Section; and*

13
               *California Interscholastic Federation Southern Section*

14
               PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

15

16
               By: */s/ Randall S. Luskey*

17
               RANDALL S. LUSKEY (SBN 240915)

18
               rluskey@paulweiss.com
               535 Mission Street, 25th Floor

19
               San Francisco, CA 94105
               Telephone: (628) 432-5100

20
               Facsimile: (628) 232-3101

21
               JAY COHEN (*admitted pro hac vice*)

22
               jaycohen@paulweiss.com
               1285 Avenue of the Americas

23
               New York, NY 10019
               Telephone: (212) 373-3000

24
               Facsimile: (212) 757-3990

25

26

27

28

-33-

1

PAUL D. BRACHMAN (*admitted pro hac vice*)
pbrachman@paulweiss.com
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

2

3

4

5

*Attorneys for Defendant Playfly, LLC*

6

7

MAYER BROWN LLP

8

By: /s/ *Britt M. Miller*

9

10

BRITT M. MILLER (*admitted pro hac vice*)
bmiller@mayerbrown.com
DANIEL FENSKE (*admitted pro hac vice*)
dfenske@mayerbrown.com
71 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711
CHRISTOPHER J. KELLY (SBN 276312)
cjkelly@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2025 -- Direct Dial
(650) 331-4525 -- Direct Facsimile

11

12

13

14

15

16

17

18

19

*Attorneys for Defendant Spectrum SportsNet, LLC*

20

21

WEIL, GOTSHAL & MANGES LLP

22

By: /s/ *Yehudah Buchweitz*

23

24

YEHUDAH BUCHWEITZ (*admitted pro hac vice*)
Yehudah.Buchweitz@weil.com
767 Fifth Avenue
New York, NY 10153
+1 212 310 8256 Direct
+1 212 310 8007 Fax

25

26

27

28

-34-

1
2
3
4

MEAGAN BELLSHAW (SBN 257875)
Meagan.Bellshaw@weil.com
2001 M Street NW, Suite 600
Washington, DC 20036
+1 202 682 7140 Direct
+1 202 857 0940 Fax

5
6
7
8

DAVID SINGH (SBN 300840)
David.Singh@weil.com
201 Red Shores Parkway
Redwood Shores, CA 94065
+1 650 802 3010 Direct
+1 650 802 3100 Fax

9
10

*Attorneys for Defendants 2080 Media, Inc.; VNN Media, LLC;
MaxPreps, Inc.; NFHS Network, LLC; and Huddle Tickets,
LLC*

11
12

O'HAGAN MEYER

13

By: /s/ *Dana J. Finberg*

14
15
16
17
18

DANA J. FINBERG (SBN 257459)
dfinberg@ohaganmeyer.com
One Embarcadero Center
Suite 2100
San Francisco, CA 94111
T: 415.578.6902
F: 415.578.6910

19
20
21
22

C. QUINN ADAMS (*admitted pro hac vice*)
cadams@ohaganmeyer.com
411 E. Franklin Street
Suite 500
Richmond, VA 23219
T: 804.403.7125

23

*Attorneys for Defendant SBLive Sports, Inc.*

24
25
26
27
28

MOTION TO DISMISS                                    Case No.: 3:25-cv-4603 LB

**ATTESTATION**

I, Daniel B. Asimow, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all other signatories have concurred in this filing.

Dated:  August 25, 2025

/s/ *Daniel B. Asimow*
Daniel B. Asimow

MOTION TO DISMISS                                    Case No.: 3:25-cv-4603 LB

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 25, 2025, the foregoing document was filed with the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-1.  The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-1 to accept that Notice as service of this document.

Dated:  August 25, 2025

                                        /s/ *Daniel B. Asimow*
                                        Daniel B. Asimow

MOTION TO DISMISS                                        Case No.: 3:25-cv-4603 LB