United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DOMINIK CALHOUN, et al.,<br>Plaintiffs,<br>v.<br>CALIFORNIA INTERSCHOLASTIC FEDERATION, et al.,<br>Defendants. | Case No. 25-cv-04603-LB<br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: ECF No. 84 |

## INTRODUCTION

This putative class action challenges a single rule governing California high-school athletics. In an order dismissing the original complaint, the court held that the California Interscholastic Federation and its ten regional sections (together, CIF) are immune under *Parker v. Brown* from antitrust challenges to their amateurism and transfer rules but not from a challenge to a rule barring student-athletes from licensing their name, image, and likenesses (NIL) in connection with their school-affiliated identities (such as school uniforms, insignia, and team affiliation). The court dismissed the complaint's markets as implausibly pled and gave the plaintiff leave to amend the market allegations and to add a plaintiff with standing for prospective relief.[1]

[1] Order – ECF No. 77 at 2, 14–19. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

The first amended complaint narrows the case to the NIL rule. It adds Patrick Hall as a plaintiff, limits the alleged labor market to high-school varsity athletes and divides it into sport-specific submarkets, and adds allegations meant to show that the NIL for California high-school athletes is not interchangeable with the NIL for athletes in other states or who play different sports.[2] CIF moves to dismiss. It contends that (1) the plaintiffs plead no injury because the immune amateurism and transfer rules and state law foreclose the compensation that the NIL rule allegedly denies and (2) the two alleged relevant markets remain implausibly pleaded.[3] The parties agree that the state-law claims rise or fall with the federal antitrust claims.[4]

The motion is granted for two independent reasons.

First, the plaintiffs again do not plead a plausibly relevant market, which the rule of reason requires. The statewide varsity-labor markets are implausible because (1) the complaint attributes the suppression of any such market to the amateurism and transfer rules that the court has held are immune from challenge and (2) the markets are not defined by reference to reasonable interchangeability. The national NIL market fails for the same interchangeability reasons identified in the prior order: the amended complaint still does not explain why California high-school NIL is not reasonably interchangeable with the NIL of athletes in other states or with the NIL of other athletes who play different sports at different skill levels. The plaintiffs' fallback — direct evidence of anticompetitive effect excuses a market definition — does not apply to a rule-of-reason claim like this one.

Second, independently, the plaintiffs plead no antitrust injury for their two principal theories of lost compensation: the opportunity to be paid by licensing their school-affiliated NIL and any share of broadcast revenue. Both opportunities are barred not by the challenged NIL rule but instead by the immune amateurism and transfer rules and by Cal. Civ. Code § 3344(d). An injury that an independent lawful constraint would inflict is not injury caused by the challenged conduct.

---

[2] First Am. Compl. (FAC) – ECF No. 81 at 8–9 (¶¶ 14–19), 27 (¶ 78), 33–36 (¶¶ 95–103).

[3] Mot. – ECF No. 84 at 12–23.

[4] Opp'n – ECF No. 88 at 24; Reply – ECF No. 89 at 7 n.1.

United States District Court
Northern District of California

Because the Sherman Act theories (and claims) fail, the Cartwright and Unfair Competition Law (UCL) claims fall too. The dismissal is with leave to amend.

## STATEMENT

### 1. The Prior Order

The original complaint challenged three sets of CIF rules: (1) the amateurism rules (capping athletic awards and barring cash and other payments of value to student athletes) (CIF Bylaws 200(B), 212, 802(A)–(B)); (2) the transfer rules (governing a student athlete's eligibility and barring athletically motivated transfers and undue influence) (CIF Bylaws 201, 206, 207, and 510); and (3) the NIL rule (barring NIL licensing tied to school-affiliated insignia/identities) (CIF Bylaws 212(C)(3)–(4)).[5] The court held that (1) CIF is not an arm of the state and so lacks Eleventh Amendment immunity, (2) CIF has state-action immunity under *Parker v. Brown* for the amateurism and transfer rules but not the NIL rule, (3) the two alleged markets were not plausibly pleaded, (4) the standing challenge was largely mooted by the immunity ruling, leaving the loss of NIL compensation as the remaining alleged injury, and (5) the state law claims rise and fall with the federal claims (which resulted in the dismissal of the UCL claim). The media defendants, who had no connection to the challenged rules, were dismissed. The court gave leave to amend the market allegations and to add a plaintiff with standing for prospective relief.[6]

On the NIL rule specifically, the court held that the plaintiffs plausibly pleaded a challenge because (1) the record did not establish that the Legislature clearly intended to deprive student-athletes categorically from sharing in revenues from their school-affiliated NIL, and (2) the NIL rule was not a reasonably foreseeable result of section 3344(d), which allows the uncompensated use of NIL in broadcasts but does not foreseeably authorize a categorical bar on student-athletes' sharing revenues from school-affiliated NIL.[7]

---

[5] Order – ECF No. 77 at 5–7 (summarizing the challenged CIF rules).

[6] *Id.* at 2, 14, 17–20.

[7] *Id.* at 15–16.

United States District Court
Northern District of California

**2. The Amended Complaint**

The amended complaint has four substantive changes. First, it adds Patrick Hall, a junior varsity-football player at Mater Dei High School who alleges that he appeared in school promotional content without any compensation for school-affiliated use of his NIL.[8] Second, it states that the plaintiffs do not challenge the amateurism rules except to the extent that they might be construed to interfere with their NIL monetization (and it deletes the prior discussion of the transfer rules).[9] Third, it limits the all labor market to California high-school "varsity" athletes and alleges that each varsity sport is an independent submarket.[10] Fourth, it adds allegations meant to distinguish California high-school NIL from out-of-state and cross-sport NIL, chiefly that broadcast advertisers value local audiences and that football and basketball players would not switch to "less elite" sports if NIL rules for other sports were relaxed.[11]

The amended complaint alleges two sets of relevant markets. The first is statewide markets for the athletic labor of CIF varsity student-athletes, with each sport an independent submarket. The plaintiffs allege that these markets "already exist[]" but are "heavily suppressed" by CIF's restrictions on "compensation for athletic labor, transfers for athletic reasons, and recruiting."[12] The second is a national market for the use of California high-school varsity athletes' NIL for commercial and promotional purposes, including in broadcasts (specifically, "live or prerecorded broadcasts of athletic competitions . . . and in sports data and marketing software").[13]

The plaintiffs' alleged injury is that, but for the NIL rules, CIF member schools and sections would compete to recruit and pay student athletes for their labor by offering less restrictive NIL rules or a share of NIL revenues, and that the plaintiffs would have earned money either by

[8] FAC – ECF No. 81 at 8–9 (¶¶ 14–19).

[9] *Id.* at 20 (¶ 52); *see* Blackline – ECF No. 81-1 at 24 (¶ 52) & 26–32 (deleted text).

[10] FAC – ECF No. 81 at 27 (¶ 78).

[11] *Id.* at 38–40 (¶¶ 96–103).

[12] *Id.* at 27 (¶¶ 79); *see also id.* at 27–33 (¶¶ 80–94).

[13] *Id.* at 33 (¶ 95); *see also id.* at 33–37 (¶¶ 95–105).

licensing their school-affiliated NIL or by sharing in broadcast revenue.[14] They assert claims under section 1 of the Sherman Act (claims one and two), the Cartwright Act (claims three and four), and the UCL (claim five).[15]

**3. Procedural History**

The parties have consented to magistrate-judge jurisdiction.[16] 28 U.S.C. § 636(c). The court held a hearing on the motion to dismiss on August 20, 2026.

## LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court accepts well-pleaded facts as true and draws reasonable inferences for the plaintiff, but it need not accept conclusory allegations, unwarranted deductions, or unreasonable inferences. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In antitrust cases, "the fact of injury or damage must be alleged at the pleading stage," and conclusory allegations of injury do not suffice. *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013).

Unless it is asserting a per se claim, under the rule of reason, a plaintiff must plead a plausible relevant market defined by reasonably interchangeability and cross-elasticity of demand. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018); *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104–05 (9th Cir. 1999); *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1031 (N.D. Cal. 2008). A proposed market that "clearly does not encompass all interchangeable substitute products" or that includes products that are not interchangeable is

---

[14] *Id.* at 7 (¶ 13), 9 (¶ 19), 48 (¶ 137).

[15] *Id.* at 5 (¶ 4), 72–79 (¶¶ 209–54).

[16] Consents – ECF Nos. 7, 21, 93.

legally insufficient, and a motion to dismiss may be granted. *In re eBay*, 545 F. Supp. 2d at 1031 (cleaned up).

Article III standing requires that a plaintiff suffers (1) an injury in fact (2) fairly traceable to the challenged conduct of the defendant (3) that is likely to be redressed by a favorable judicial decision. *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016). Antitrust standing additionally requires antitrust injury: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 456 (9th Cir. 2021) (cleaned up). "Recovery will not be permitted for injuries which have been independently caused by something other than the antitrust violation." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1366 (9th Cir. 1986).

**ANALYSIS**

**1. The Amended Complaint Does Not Plead a Plausible Relevant Market**

The surviving claim is a rule-of-reason challenge to the NIL rule. The plaintiffs thus must plead a plausible relevant market. *Hicks*, 897 F.3d at 1120. Defining the market is a "threshold step" in rule-of-reason case, and a facially implausible market warrants dismissal. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 974–74 (9th Cir. 2023); *In re eBay*, 545 F. Supp. 2d at 1031. The amended complaint pleads two markets, and neither is plausible.

**1.1 The Statewide Varsity Athletic-Labor Market**

The market fails for two reasons.

First, there is no plausible labor market that is suppressed by the NIL rules because (as pleaded) any suppression of a competitive labor market is caused by the immune amateurism and transfer rules, not the NIL rules challenged here. The amended complaint alleges that the labor markets are "heavily suppressed by CIF's anticompetitive restrictions on compensation for athletic labor, transfers for athletic reasons, and recruiting."[17] These are the amateurism and transfer rules,

[17] FAC – ECF No. 81 at 27 (¶ 79), 31 (¶¶ 90–91).

not the NIL rule, and the court has held them immune under *Parker*.[18] A market that cannot exist except by lifting immune restraints is not a market suppressed by the NIL rule. The relabeling of the market as "varsity" and its division by sport does not change that conclusion.[19]

Second, the markets are not defined by reasonable interchangeability.[20] *Big Bear*, 182 F.3d at 1105; *In re eBay*, 545 F. Supp. 2d at 1031. The amended complaint does not explain why a student playing a given sport would treat every high school in the state as interchangeable or why a school recruiting for a sport would treat every student-athlete as interchangeable. The "switching" allegations — that football and basketball players would not take up badminton or soccer if NIL rules for those sports were relaxed[21] — speak to whether sports are distinct, not to interchangeability among schools or among athletes within a sport, which is the relevant question. The geographic aspect of the market definition is also unexplained: the complaint both assumes statewide mobility and concedes that the most sought-after athletes move across state lines,[22] which means that the alleged statewide market lacks a basis. Even if each sport is a submarket, the complaint does not supply the "rough contours" of any market. *Intel Corp. v. Fortress Inv. Grp. LLC*, No. 19-cv-07651-EMC, 2020 WL 6390499, at *7 (N.D. Cal. July 15, 2020); *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011).[23]

### 1.2 The National NIL Market

The court previously identified two issues with reasonable interchangeability in the plaintiffs' national-market theory: the pleadings did not establish (1) why California high-school athletes' NIL

[18] Order – ECF No. 77 at 15, 17. At the argument on the first motion to dismiss, the plaintiffs' counsel likewise identified the transfer rule, not the NIL rule, as the mechanism that would "stimulate competition" for athletes and that the amateurism rules are what "prevent schools from providing any form of compensation to students." 12/18/2025 Tr. – ECF No. 75 at 67 (p. 67:8–23).

[19] Mot. – ECF No. 84 at 20 (making this point).

[20] Order – ECF No. 77 at 19.

[21] FAC – ECF No. 81 at 34–35 (¶¶ 99, 101).

[22] *Id.* at 30–31 (¶¶ 86–89).

[23] The plaintiffs contend that the existence of a labor market is a question of fact, not law, and is not amenable to resolution on a motion to dismiss. Opp'n – ECF No. 88 at 20–21. A relevant market is a fact-intensive inquiry, but this does not preclude a determination at the pleadings stage about whether a market definition is facially unsustainable. *Biddle v. Walt Disney Co.*, 696 F. Supp. 3d 865, 882 (N.D. Cal. 2023) (citing *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008)).

United States District Court
Northern District of California

is not reasonably interchangeable with the NIL of athletes in other states and (2) why the NIL of elite athletes is reasonably interchangeable with that of other athletes.[24] The amended complaint does not fix these issues.

On the interstate issue regarding athletes from other states, the new allegations are that advertisers buy local audiences (such as a San Diego or Los Angeles car dealership advertising on local broadcasts).[25] That supports the existence of a local market, not the national market that the plaintiffs allege. It does not allege why, for advertisers seeking national audiences, California athletes' NIL is not reasonably interchangeable with the NIL of high-school athletes from other states.[26] The allegation that broadcasting is consolidated to facilitate regional and national ad buys, which the court flagged before, continues to suggest interchangeability rather than the opposite.[27] The pleading also does not address the substitutes a national advertiser might use such as college athletes, professional athletes, celebrities, influencers, and others.[28]

On the intrastate issue, the alleged market still lumps together the NIL of thousands of varsity athletes of varying skill. The plaintiffs' allegation that "every team member's NIL is just as important as any other team member's NIL" is not consistent with the allegation that elite athletes' NIL is not interchangeable with that of lesser athletes.[29] There is no explanation about why a single market embraces both. The group-licensing allegation does not save the market definition: the plaintiffs plead no facts about how NIL is licensed on a group basis, and section 3344(d) provides that a broadcast use of a student-athlete's NIL "shall not constitute a use for which consent is required." There thus is no plausible market for broadcast group licenses the law does not require.[30]

---

[24] Order – ECF No. 77 at 19.

[25] FAC – ECF No. 81 at 33–34 (¶ 96).

[26] *Id.*

[27] Order – ECF No. 77 at 19.

[28] Mot. – ECF No. 84 at 22.

[29] FAC – ECF No. 81 at 34 (¶ 99), 36 (¶ 103).

[30] *Id.* at 36 (¶103); Cal. Civ. Code § 3344(d); Order – ECF No. 77 at 5, 18.

### 1.3 The Direct-Effects Theory Does Not Excuse a Market Definition

The plaintiffs contend that direct evidence of anticompetitive effects means that they do not have to plead a plausible market.[31] That route is available for per se claims and for the limited "quick look" claims. *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 838–39 (9th Cir. 2022); *Epic Games*, 67 F.4th at 974 n.6. Even where direct effects are alleged, a plaintiff must still plead the "rough contours" of a relevant market defined by reasonable interchangeability. *Intel*, 2020 WL 6390499, at *7; *Golden Gate Pharmacy Servs.*, 433 F. App'x at 599. The plaintiffs' citation to *O'Bannon v. NCAA* does not change this. There the relevant college-education market was established and undisputed, and the schools had fixed athlete NIL valued at zero, whereas here the plaintiffs concede that student-athletes may monetize NIL without school insignia.[32] 802 F.3d 1049, 1071 (9th Cir. 2015).

In sum, the plaintiffs do not plead plausible relevant markets, which resolves the motion to dismiss. The court nonetheless addresses antitrust injury in the next section.

## 2. Independently, the Plaintiffs Do Not Plead Antitrust Injury

The plaintiffs have two theories of injury: (1) lost payments from schools for school-affiliated NIL and (2) a lost share of schools' broadcast revenue.[33] Neither theory alleges an injury caused by the challenged NIL rule.

The school-payment theory is foreclosed by the immune amateurism and transfer rules.[34] The amateurism rules prohibit payment to student-athletes for the use of school-affiliated NIL (whether cash or a license of school insignia that lets athletes earn more). The court held these rules to be immune. An injury that an immune, independent restraint would inflict regardless of the challenged rule is not antitrust injury. *L.A. Mem'l Coliseum*, 791 F.2d at 1366; *PharmacyChecker.com LLC v. LegitScript LLC*, 137 F.4th 1031, 1045–46 (9th Cir. 2025).

---

[31] Opp'n – ECF No. 88 at 23–24.

[32] FAC – ECF No. 81 at 22–23 (¶ 63); Order – ECF No. 77 at 6–7, 15–16.

[33] FAC – ECF No. 81 at 7 (¶ 13), 9 (¶ 19), 48 (¶ 137), 59 (¶ 170).

[34] Order – ECF No. 77 at 15, 17.

United States District Court
Northern District of California

The plaintiffs' response — that the amateurism rules reach only cash and enumerated awards, not NIL licenses — does not survive the text of the rules, which cap "athletic awards" by total "value" and are not limited to cash.[35] The point is not that the plaintiffs are engaged in illegal conduct. It is that an independent lawful restraint (the immune rules), not the challenged rule, is the source of the claimed injury. *PharmacyChecker.com*, 137 F.4th at 1045–46.

**3. The State Claims Fail Because the Federal Claims are Dismissed**

The parties agree, and the court previously held, that the Cartwright Act and UCL claims are analyzed under the standards that apply to the Sherman Act claims.[36] Because the Sherman Act claims are dismissed, the Cartwright Act and UCL claims are dismissed too.

**4. Leave to Amend**

Leave to amend should be freely given unless amendment would be futile, the plaintiff has repeatedly failed to cure, or there is undue delay, bad faith, or prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Whether to grant leave here is close. That said, the dismissal turns on pleading deficiencies that are not incurable as to a narrowed, non-broadcast theory. The court also did not previously address antitrust injury. The court thus dismisses with leave to amend, limited to repleading a plausible non-broadcast, school-affiliated NIL market and a corresponding injury theory consistent with this order. The plaintiffs may not reassert the dismissed labor-market or broadcast-NIL theories.

---

[35] CIF Bylaws 212(C), 802(A)–(B), 802(D); Opp'n – ECF No. 88 at 12–13; Reply – ECF No. 89 at 8–10.

[36] Order – ECF No. 77 at 19–20 (citing *StubHub, Inc. v. Golden State Warriors*, LLC, No. 15-cv-1436-MMC, 2015 WL 6755594, at *4 (N.D. Cal. Nov. 5, 2015)); Opp'n – ECF No. 88 at 24; Reply – ECF No. 89 at 7 n.1.

United States District Court
Northern District of California

## CONCLUSION

The motion to dismiss is granted. Any amended complaint is due by September 10, 2026, and must include a blackline compare of the amended complaint against the current complaint.

This resolves ECF No. 84.

**IT IS SO ORDERED.**

Dated: August 20, 2026

LAUREL BEELER
United States Magistrate Judge